700 P.2d 85

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Alan PETERSON, Defendant-Appellant.**

No. 15253.

Court of Appeals of Idaho.

April 18, 1985.

Gar Hackney, Lynn, Scott & Hackney, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Alan Peterson was found guilty by a jury of possession of a controlled substance, cocaine. I.C. § 37–2732(a)(1). The court entered an order withholding judgment of conviction, and granted probation to Peterson. Peterson appeals. He seeks review of an order of the trial court denying a motion to suppress the cocaine later admitted in evidence at trial. We affirm.

The issue in this case concerns seizure of a quantity of cocaine found by law enforcement officers in Peterson's bedroom, after

Peterson had been arrested under a warrant. Peterson argues that the evidence seized was "fruit of the poisonous tree," tainted because of alleged illegal activities of the officers in effecting his arrest.

The following facts, regarding Peterson's arrest and the seizure of the cocaine, were found by the trial court in deciding the motion to suppress. Armed with an arrest warrant,[1] several state and federal law enforcement agents knocked on the door of Peterson's residence, shortly before midnight on May 12, 1982. Peterson, clad only in a pair of pants, opened the door. The doorway was lit both by an outside light and by an interior light in the foyer. Upon answering the door, Peterson was informed that the visitors were police officers who had a warrant for his arrest. One of the officers asked Peterson if they could step inside the house. Peterson responded "only if you have a search warrant." Another officer said "we'll take care of this inside" and motioned Peterson aside as the officers walked into the foyer. Once all of the officers were inside the house, the arrest warrant was read to Peterson and the officers made a "protective sweep" of the premises.

After the arrest warrant had been read to Peterson and he had been advised of his *Miranda* rights, Peterson was asked if he had any firearms in the house and if they were loaded. Peterson disclosed that there were firearms in his bedroom closet and that he did not know whether they were loaded. Peterson testified that an officer then asked him to show them the guns and that, when walking to the bedroom, Peterson asked if he could put on some clothes. The only officer who testified at the suppression hearing, stated that he was not aware of any conversation requesting Peterson to point out where the guns were stored, but that Peterson asked if he could put on a shirt, another pair of pants and shoes before going down to the station. The court found it was not disputed that the officers informed Peterson he would have to be escorted to his bedroom where his clothes were located. Peterson showed no signs of refusal and led the officers to his bedroom. An officer then requested Peterson to point to the shirt he wanted to wear and it was pulled out of a drawer. When asked which pair of pants he wanted, Peterson pointed to a pair hanging in a closet. As an officer reached for the pants, the officer observed, in plain view, a plastic bag containing a white powdery substance on the floor of the closet. The officers performed a field test on the substance and determined it was cocaine. It was seized as evidence.

Peterson moved to suppress the cocaine, contending the officers were not lawfully in a place where they were authorized to be, when they observed the bag of cocaine on the closet floor.[2] He contends the officers, when confronted by Peterson at his front door, immediately should have effected the arrest and taken him to the station,

1. The warrant had been issued for the arrest of an unnamed defendant, allegedly to be found at Peterson's address, on felony charges of delivery and of conspiracy to deliver a controlled substance. The warrant was given to an officer who could identify the proper arrestee when the warrant was served, because that officer earlier had observed the "unnamed defendant" participate in a sale of a controlled substance to an undercover agent. Although Peterson, in his motion to suppress, questioned whether the warrant had been issued on probable cause, the district court found against him on that point. The court's ruling in that regard has not been raised as an issue on this appeal.

After Peterson's arrest, a complaint was filed charging him with two counts of delivery of a controlled substance, with one count of conspiracy to deliver a controlled substance, and with one count of possession of a controlled substance. Following a preliminary hearing, the examining magistrate held there was insufficient probable cause to bind Peterson over for trial on the two delivery counts. However, Peterson was bound over on the conspiracy and possession charges. The jury acquitted him on the conspiracy offense but found him guilty of the possession charge, involving the cocaine which is the subject of this appeal.

2. The plain view doctrine has been succinctly stated. "Objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

without ever entering the house. The entry into his house, Peterson submits, was illegal and tainted any evidence the officers might have thereafter seen and seized.

The trial court agreed with Peterson that the entry into the house was illegal. The court held there was sufficient illumination at Peterson's doorway to read the arrest warrant without entering into the residence. · The court also held that Peterson did not consent to the officers' entry; that the entry was not authorized in performance of a search incident to an arrest because it involved an area beyond Peterson's immediate control; and that there were no exigent circumstances. The court further found the conduct of the officers in entering the house was not justified by their right to make a protective sweep in order to secure the premises because they had no articulable reason to believe there was any danger in effecting the arrest.

However, the trial court found that the observation of the cocaine was not accomplished by exploitation of the officers' unlawful protective sweep or unlawful entry, *see Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Citing *Washington v. Chrisman*, 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982), the court held that once Peterson was arrested the officers were justified in accompanying Peterson to the bedroom to obtain clothing, in order to ensure their own safety and to prevent an escape. The court concluded that the officers were lawfully in Peterson's bedroom when the cocaine was observed in plain view.

The record supports the trial court's finding that no valid reason was shown for the officers' entry into Peterson's house. The arrest of a person "is a species of seizure required by the [fourth amendment] to be reasonable." *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980). It has been held that where officers have an arrest warrant, and have observed the person to be arrested outside of the arrestee's residence, the officers may not deliberately delay the arrest until the arrestee is inside the premises in order to give officers an opportunity to observe what is inside by conducting a "raid." In such circumstances, the officers' entry into the premises is illegal and any evidence seized as a direct result must be suppressed. *Abbott v. United States*, 138 A.2d 485 (D.C.1958).

■■■ Similarly, we believe that where, as in this case, there is no impediment to making an arrest in a doorway, and the arrestee does not attempt to retreat into the house, the officers may not intrude into the house over the objection of the arrestee, simply to complete effectuation of the arrest and put the officers into a position where they can more fully observe the interior of the premises—absent any other reasonable justification for the entry, such as consent to a search, response to an emergency, hot pursuit of a fleeing felon, for safety purposes where a serious and demonstrable potential for danger exists, or to prevent destruction or removal of evidence. *See generally, Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). We agree with the trial court that the entry into Peterson's house, without a warrant to search the premises and when he easily could have been arrested on his doorstep, was an impermissible invasion of Peterson's right of privacy and to be free from an unreasonable search and seizure under the fourth amendment to the United States Constitution. *Id.*

It does not follow, however, that any evidence later obtained from Peterson's house must be suppressed as "fruit" of the officers' unlawful entry. The United States Supreme Court said in *Wong Sun v. United States*, 371 U.S. 471, at 487–88, 83 S.Ct. at 417:

We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distin-

guishable to be purged of the primary taint." [Citation omitted.]

See also Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939); Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

■ Here we believe there were very significant intervening events or circumstances between the illegal entry and the discovery of the evidence which purged the primary taint of the unlawful invasion. First, as a result of Peterson's arrest, the officers had a right to remain literally at Peterson's elbow at all times. Washington v. Chrisman, 455 U.S. 1, 6, 102 S.Ct. 812, 816, 70 L.Ed.2d 778 (1982). In Chrisman, the Court said:

> [I]t is not "unreasonable" under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest. The officer's need to ensure his own safety—as well as the integrity of the arrest—is compelling. Such surveillance is not an impermissible invasion of the privacy or personal liberty of an individual who has been arrested. [Id. at 7, 102 S.Ct. at 817; footnote omitted.]

Thus, we believe the officers lawfully could remain in close proximity to Peterson even though the arrest had been effected under unreasonable circumstances. Second, Peterson voluntarily disclosed that there were firearms, possibly loaded, in the closet in his bedroom. Third, he expressed a desire to obtain clothing from his bedroom and eventually, in particular, from the closet where the firearms were located. Finally, the officers, consistent with the need to ensure safety addressed in Chrisman, were reaching for Peterson's clothes when they observed the cocaine in plain sight.

Seizure of evidence found in plain view while monitoring an arrestee's activities in obtaining appropriate clothing has often been upheld.

If the defendant is placed under arrest at a particular place in the premises, even at the front door, the circumstances may be such that he will be allowed to move about the premises prior to departure for the police station. Although this may occur for other reasons as well, it occurs with greatest frequency when the defendant needs to change his clothes or put on additional clothing before departing. Often the defendant will ask that he be allowed to do this, although on some occasions it appears that the police have been the motivating force in causing the defendant to seek out other clothing. In either event, the courts have had little hesitancy in holding admissible evidence discovered by the police as a consequence.

Such a discovery may occur in a variety of ways. Often, the police will simply accompany the arrestee to another part of the premises, usually to the defendant's bedroom, where evidence is observed in plain view. Or, once there the police may inspect the interior of a certain area, such as a closet or bureau drawer, where the defendant says he wants to obtain clothing needed by the defendant. Finally, it sometimes happens that the defendant is held at the very place of arrest by one officer while another goes in the search of clothing.

None of these practices seems inherently unreasonable, and thus it is not surprising that they have all been upheld by the courts. Where the police have done no more than accompany the defendant to another part of the premises, resulting in their observation of evidence, it need only be determined that the police were lawfully present where they made the observation. Courts have readily accepted the proposition that to prevent escape and for self-protection it is lawful to so accompany the arrestee. [Footnotes omitted.]

W. LAFAVE, SEARCH AND SEIZURES, A TREATISE ON THE FOURTH AMENDMENT. § 6.4(a) at 420–21 (1978).

We believe the circumstances surrounding the discovery of the cocaine in Peterson's house show the evidence was found by significantly distinguishable means to counteract any claim that the evidence was "come at by exploitation" of the officers' illegal entry. We uphold the order denying Peterson's motion to suppress the cocaine. Accordingly, the order withholding judgment of conviction is affirmed.

BURNETT, J., concurs in the result.

SWANSTROM, Judge, concurring specially:

I believe the district judge clearly resolved the disputed testimony about the reason for the officers going into the bedroom in favor of the officer who testified on this issue. The judge implicitly found that the officers went into Peterson's bedroom to accompany Peterson because of his request to get clothing and not because of an officer's request to be shown guns. The district judge correctly concluded under *Chrisman* that this protective action by the officers was justified. I therefore concur fully in the opinion.