981 P.2d 754

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Gary William COMA, Defendant–Appellant.**

**No. 24612.**

Court of Appeals of Idaho.

June 28, 1999.

John M. Adams, Chief Kootenai County Public Defender; J. Bradford Chapman, Deputy Public Defender, Coeur d'Alene, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Gary William Coma challenges the constitutionality of police officers' entry into his home to place him under arrest pursuant to a misdemeanor arrest warrant. Coma contends that a home entry is not permissible under an arrest warrant where the arrest is for a misdemeanor rather than a felony and, in the alternative, that the officers' entry exceeded that necessary to effectuate his arrest. A motion made on these grounds to suppress evidence seen by officers inside the home was denied by the district court, and Coma appeals.

## FACTS

On the evening of June 11, 1997, Detective Turner of the Coeur d'Alene police department observed Gary Coma driving a pickup. Detective Turner recognized Coma as someone he had previously cited for driving without privileges. Turner therefore followed Coma's vehicle while checking with police dispatch on the status of Coma's driver's license. Turner was informed that Coma had obtained a valid license, but also had a bench warrant outstanding for failure to appear for a jail sentence. Turner followed Coma to his home, where a uniformed officer joined the detective. After Coma went inside, the detective and the uniformed officer approached the house. They entered a front porch through a screen door, walked across the porch, and knocked on a second door that separated the porch from the remainder of the house. In his subsequent testimony, Detective Turner referred to this second door as "the main door."

When Coma opened this interior door, Detective Turner put his foot in the doorway to prevent closure of the door and advised Coma that the officers needed to come inside to talk to him. Coma asked why they wanted entry, and Turner responded that they had a warrant for Coma's arrest. Turner then asked that Coma turn around and place his hands behind his back. When Coma did not comply with this request or with a repetition of it, Turner stepped inside the doorway about a foot and a half to handcuff Coma and effectuate the arrest. While thus through the doorway, Turner saw sitting on a sofa a few feet away a plastic baggie and a powdery white substance that Turner believed to be a controlled substance. After Coma was taken into custody, based upon the items Detective Turner had seen during the arrest, Turner obtained a search warrant for Coma's residence. In executing the warrant, police recovered the powder, which was later identified as methamphetamine, and some drug

paraphernalia. Coma was then charged with possession of a controlled substance, I.C. § 37–2732(c).

Coma filed a motion to suppress the evidence found in his home, arguing that the officers' initial entry was illegal and that the resulting search warrant was therefore tainted as well. The district court denied the motion. Coma thereafter pleaded guilty, but preserved his right to appeal the denial of his suppression motion.

## ANALYSIS

■ On appeal Coma contends his suppression motion should have been granted because the officers' entry of his home to make an arrest violated the Fourth Amendment to the United States Constitution.[1] When we review a trial court's disposition of a motion to suppress evidence, we defer to factual findings of the trial court unless they are clearly erroneous, but we give free review to the trial court's determination as to whether, based on those facts, constitutional standards have been met. *State v. Morris,* 131 Idaho, 562, 565, 961 P.2d 653, 656 (Ct. App.1998); *State v. Pick,* 124 Idaho 601, 603, 861 P.2d 1266, 1268 (Ct.App.1993); *State v. Heinen,* 114 Idaho 656, 658, 759 P.2d 947, 949 (Ct.App.1988). The reasonableness of a search or seizure is a question of law calling for our independent review. *Morris, supra; State v. McIntee,* 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App.1993); *Heinen,* 114 Idaho at 658, 759 P.2d at 949.

### A. Entry of Home to Execute Misdemeanor Arrest Warrant

Coma's first challenge to his arrest hinges upon the fact that the arrest warrant which the officer came to execute was a misdemeanor warrant. Coma asserts that under the Fourth Amendment, only a search warrant or a felony arrest warrant will suffice to authorize a police officer's entry into a residence, and therefore the officer's intrusion into Coma's house to effectuate his arrest was illegal.

For this argument, Coma relies upon the United States Supreme Court's decision in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), where the Court considered whether officers may make a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. The Court held that such a warrantless intrusion violated the Fourth Amendment. At the same time, the Court rejected the notion that only a search warrant would adequately protect the privacy interest at stake. Rather, the Court said that an arrest warrant would serve the constitutional purpose:

It is true that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.

*Id.* at 602, 603, 100 S.Ct. at 1388, 63 L.Ed.2d at 660, 661. Focusing like a laser on the Court's reference to "a felony" in the foregoing quotation, Coma argues that *Payton* authorizes home entries with arrest warrants only if the warrant is for a felony, and that misdemeanor arrest warrants may not be executed inside the suspect's home.

■ We do not read *Payton* to imply such a limitation. The Supreme Court's focus was on the necessity of a magistrate's probable cause review to serve as a tempering check on zealous law enforcement. This purpose is accomplished when an arrest warrant is issued, whether the underlying offense is a misdemeanor or felony. For this reason, courts considering the question have refused to distinguish between felony and misde-

---

1. Coma's challenge to the entry is based only on the Fourth Amendment. He has made no allega-

tion that the officers did not comply with Idaho's "knock and announce" statute. I.C. § 19–611.

meanor arrest warrants. *See, e.g., United States v. Spencer,* 684 F.2d 220, 222–223 (2d Cir.1982); *Smith v. Tolley,* 960 F.Supp. 977, 991–92 (E.D.Va.1997); *People v. LeBlanc,* 60 Cal.App.4th 157, 70 Cal.Rptr.2d 195, 198–99 (1997). Coma cites no authority to the contrary. We therefore conclude that the limited authority recognized in *Payton,* to enter a suspect's home when police reasonably believe the suspect to be within, is not confined to felony warrants but applies to misdemeanor arrest warrants as well.[2]

## B. Reasonableness of the Entry

Coma argues in the alternative that the officers' intrusion into his home exceeded that which was necessary to effectuate his arrest and therefore exceeded the intrusion authorized by an arrest warrant.

Coma correctly points out that an arrest warrant, although permitting a home entry when necessary to accomplish the arrest, does not give officers unlimited admission. The rule announced in *Payton* was that a valid arrest warrant carries "*limited authority* to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton,* 445 U.S. at 603, 100 S.Ct. at 1388, 63 L.Ed.2d at 661. (Emphasis added.) In a subsequent case, *State v. Peterson,* 108 Idaho 463, 465, 700 P.2d 85, 87 (Ct.App.1985), this Court considered the parameters of this "limited authority." We concluded that an officer's right of entry under an arrest warrant is circumscribed by its purpose—to accomplish an arrest—and therefore if an arrest can be effectuated at the threshold of the residence, the existence of an arrest warrant does not sanction an entry. In *Peterson,* officers armed with an arrest warrant knocked on the door of Peterson's residence. Peterson opened the door and was informed of the warrant. The officers then entered the foyer of Peterson's home without his consent and made a protec-

tive sweep of the premises. This Court held the entry to be unlawful, stating:

> [W]e believe that where, as in this case, there is no impediment to making an arrest in a doorway, and the arrestee does not attempt to retreat into the house, the officers may not intrude into the house over the objection of the arrestee, simply to complete effectuation of the arrest and put the officers into a position where they can more fully observe the interior of the premises—absent any other reasonable justification for the entry, such as consent to a search, response to an emergency, hot pursuit of a fleeing felon, for safety purposes where a serious and demonstrable potential for danger exists, or to prevent destruction or removal of evidence. *See generally, Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). We agree with the trial court that the entry into Peterson's house, without a warrant to search the premises and when he easily could have been arrested on his doorstep, was an impermissible invasion of Peterson's right of privacy and to be free from an unreasonable search and seizure under the fourth amendment to the United States Constitution.

*Id.* at 465, 700 P.2d at 87. *See also United States v. Albrektsen,* 151 F.3d 951 (9th Cir. 1998) (holding that, where an arrest could have been effected at the doorway of a motel room, arrest warrant did not authorize entry).

Coma contends that the restrictions on intrusion into his home outlined in *Peterson* were violated during his arrest. Within this argument, we perceive that Coma is asserting two alternative definitions of the threshold of his home. He argues first that the screen door to the front porch was the threshold that the officers could not lawfully pass without first giving Coma an opportunity to surrender to arrest at that threshold.[3]

---

**2.** This authority applies only to entry of the suspect's own residence. In *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the Supreme Court held that, absent consent or exigent circumstances, a *search warrant* must be obtained before officers may search for the subject of an arrest warrant in the home of a third party.

**3.** The transcript is ambiguous as to whether the officers knocked on the screen door before entering the porch, and the trial court did not make a finding on this point. It is clear, however, that even if they knocked on the outer door, they did not wait there for Coma to respond; they were standing in the porch at the interior door when Coma came to that door to answer their knock.

Alternatively, he argues that even if the officers could properly proceed through the porch to the interior door, they impermissibly intruded through that door to make the arrest, and only by achieving that vantage point, saw the controlled substances that ultimately led to the present charge. We consider these alternative "thresholds" separately.

### 1. The exterior screen door

The Fourth Amendment guarantees "[t]he right of the people to be secure in their ... houses ... against unreasonable searches and seizures." It shelters from unjustified government intrusion an individual's legitimate expectation of privacy that society is prepared to recognize as reasonable. *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214, 223 (1984); *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 587 (1967). However, "[w]hat a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *Id.* at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582. In *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), the United States Supreme Court held that an individual standing in the open doorway of her home, exposed to public view, was not in an area where she had an expectation of privacy. *Id.* at 42, 96 S.Ct. at 2409, 49 L.Ed.2d at 305. Therefore, the merit of Coma's argument that the police unlawfully passed through the screen door into the porch of his house turns upon whether Coma had a reasonable expectation of privacy in the porch area.

This Court addressed a similar question in *State v. Wren,* 115 Idaho 618, 768 P.2d 1351 (Ct.App.1989). In that case, the police had entered a porch to make a warrantless arrest. The issue presented was whether a porch is a public place that may be entered by law enforcement officers without a warrant. We concluded:

> If a porch consists of unenclosed steps, or if it is partially obscured but a person standing there remains visible from a street, alley or adjacent property, a reasonable expectation of privacy does not exist. The porch will be treated as a 'public' place where a warrantless arrest may be made.

\* \* \*

> Conversely, if the porch is enclosed, or is so secluded that it is not readily visible from a street, an alley or an adjoining property, then a reasonable expectation of privacy may exist. In that event, the porch is indistinguishable from the home. It is not a 'public' place where a warrantless arrest may be made, absent exigent circumstances.

*Id.* at 623, 768 P.2d at 1356. Although the present case differs from *Wren* in that Coma's arrest was made with a warrant, in both cases the pertinent inquiry is whether the defendant had a privacy interest in the porch which was entitled to Fourth Amendment protection. Therefore, application of the *Wren* analysis is appropriate to determine whether Coma's Fourth Amendment rights were violated when the officers entered his porch without first attempting to summon Coma to the porch door to surrender to arrest.

Unfortunately, the appellate record that we have been provided is inadequate to allow us to resolve this issue. At the suppression hearing, the defense introduced a photograph of Coma's house which apparently depicted the porch in question, but this photograph has not been included in the record on appeal. Perhaps because of the availability of the photograph, counsel did not elicit detailed descriptions of the porch at the hearing. Verbal descriptions given by the witnesses are cursory. They indicate that the porch was two to three feet wide and that it had a screen door. The porch was referred to as "a little walkway" and "a little vestibule." In questioning a witness, the prosecutor referred to the structure as "an enclosed porch," but no witness characterized it as enclosed or explained whether it was surrounded by solid walls or had open areas, windows or screens. The record is also devoid of any testimony indicating the presence of other elements, such as the placement of a doorbell or door knocker, that would signal to visitors whether they were expected by

the residents to knock or ring at the outer door or proceed to the inner door. The district court's findings do not describe the porch with any particularity, although the court concluded that it was reasonable for the officers to enter the porch to knock on the interior door. From this limited information, we cannot adequately discern the physical characteristics of the porch. There is simply not a sufficient record to determine whether the porch was of such a design or form that Coma possessed a reasonable expectation of privacy therein.

▆▆▆ It is well established that an appellant bears the burden to provide an adequate record upon which the appellate court can review the merits of the claims of error, *State v. Beck*, 128 Idaho 416, 422, 913 P.2d 1186, 1192 (Ct.App.1996); *State v. Beason*, 119 Idaho 103, 105, 803 P.2d 1009, 1011 (Ct. App.1991); *State v. Murinko*, 108 Idaho 872, 873, 702 P.2d 910, 911 (Ct.App.1985), and where pertinent portions of the record are missing on appeal, they are presumed to support the actions of the trial court. *State v. Repici*, 122 Idaho 538, 541, 835 P.2d 1349, 1352 (Ct.App.1992). Coma has not met this burden of supplying the necessary record. He asks this Court to hold that the district court's decision is not supported by the evidence, while not providing for our review crucial evidence upon which the district court relied. We will not second guess a trial court in such a manner. Without a complete record, we cannot say that the district court erred in concluding that the officers acted lawfully in entering through the screen door onto the front porch.

## 2. The interior door

Coma also asserts that even if the officers' entry onto the porch was constitutionally permissible, Detective Turner acted unlawfully when he crossed the interior threshold between the porch and the house as he was arresting Coma.

▆▆▆ This argument is without merit. Although, as discussed above, law enforcement officers must execute an arrest warrant without entry into the home if that is reasonably possible, the converse is also true. If the suspect impedes the arrest, as by resist-

ing or retreating into the home, officers may enter to the extent necessary to complete the arrest. That is the essence of the United States Supreme Court's holding in *Payton*. According to Detective Turner's uncontroverted testimony, when Coma responded to the officers' knock on the interior door, he was informed that the officers had a warrant for his arrest, and he was asked to turn around and place his hands behind his back. Because Coma did not comply, he was instructed a second time to turn around. When Coma still did not comply, Detective Turner stepped inside just far enough to handcuff Coma. Turner estimated the distance of his entry to be about one and a half feet past the door. This very limited entry was reasonable and necessary to accomplish the arrest.

It was from this lawful vantage point that Turner saw drugs and paraphernalia. The subsequent search warrant, issued on the basis of Turner's observations, therefore did not rest upon illegally acquired evidence.

## CONCLUSION

Coma has not shown that the district court erred in denying his suppression motion. Coma's contention that a misdemeanor warrant does not authorize the entry of a suspect's home to carry out an arrest is without merit, and he has provided an inadequate record for this Court to determine whether the officers' entry into Coma's porch without attempting to summon Coma to the outer door violated a constitutionally protected privacy interest. The limited entry made by officers in order to handcuff Coma after speaking with him at the interior threshold of the house was reasonable and did not exceed their authority under the arrest warrant. Accordingly, we affirm the district court's denial of the suppression motion.

Chief Judge PERRY concurs.

Judge SCHWARTZMAN concurring.

I fully concur in the opinion of this Court, but write to *emphasize* several points:

1. Although a person's home may be his/her "castle," that still does not entitle the

occupant to "sanctuary" in the medieval context, i.e., the castle is not impervious to the execution of an arrest warrant. As long as the police officer is possessed with a valid arrest warrant, not otherwise circumscribed to any "public place" (*see State v. Hall,* 132 Idaho 751, 979 P.2d 624 (1999)), and has probable cause to believe that the defendant is present in his own residence at the time of the attempted service, a reasonable entry can be made to effectuate an arrest.

If the warrantless entry in *State v. Manthei,* 130 Idaho 237, 939 P.2d 556 (1997)—where the officer pursued Manthei into the residence when he attempted to retreat therein, after the officer developed reasonable suspicion at the threshold that defendant possessed drug paraphernalia, a misdemeanor offense, and asked him to step outside for investigative (detention) purposes—can be upheld; then perforce, the same type of entry to effectuate an arrest under a warrant can and should be constitutionally upheld.

2. This opinion, however, should not be read as giving government agents *carte blanche,* based upon an outstanding warrant for some innocuous offense, such as possession of an overdue library book or unlicensed dog, to forcibly push their way in, make a protective sweep, and rummage around for evidence of other crimes when an arrest can easily be effectuated at the threshold. (*See Albrektsen* and *Peterson,* both cited in the lead opinion.). To that extent the sanctity of the home must be protected.

In this case the officer acted most reasonably, and should be commended, for returning to a magistrate to obtain a warrant to complete his further search and seizure.