991 P.2d 380

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John Edward NORTHOVER,**
**Defendant–Appellant.**

No. 24742.

Court of Appeals of Idaho.

Nov. 16, 1999.

Alan E. Trimming, Ada County Public Defender; Paul R. Taber, II, Deputy Public Defender, Boise, for appellant. Paul R. Taber, II, argued.

Hon. Alan G. Lance, Attorney General; Kenneth M. Robins, Deputy Attorney General, Boise, for respondent. Kenneth M. Robins argued.

PERRY, Chief Judge.

John Edward Northover appeals from the district court's order denying his motion to suppress evidence. For the reasons set forth below, we affirm.

## I.

## BACKGROUND

On the evening of December 17, 1997, Boise Police officers Walker and Hartgrove went to a two-story duplex to serve two arrest warrants upon Northover. The duplex had two doors in the center of the front of the building. When the officers approached they could see light coming from the lower daylight basement window to the right of the doors. Officer Walker left the pathway and approached the window. He then knelt down on the grass and looked

through the window. He observed an individual in a bedroom who fit Northover's description. Although he could not see what the person was doing, officer Walker observed a syringe and spoon on the desk next to where the individual was standing.

The officers knocked on the right-hand door and were advised by the person who answered that Northover might live in the basement. The officers knocked on the left-hand door, but received no answer. Officer Hartgrove then went around to the back of the residence to see if anyone was attempting to leave, and officer Walker remained at the front door.

While officer Walker was standing at the front door, Northover's roommate walked around from the side of the house and asked him what he was doing. Officer Walker identified himself and stated that he had warrants for Northover's arrest. The roommate told officer Walker that Northover was in the residence and that she would run in and get him. Officer Walker explained that, because of officer safety concerns, she would not be permitted to do so.

As the roommate and officer Walker entered the residence, the roommate shouted, "John, John, come out. The police are here. Come out." Officer Walker was partially down a short hallway when Northover walked out of an adjoining bedroom. Northover was arrested and handcuffed.

Officer Walker then stepped into the bedroom that Northover had just exited and noticed in plain view, a vial containing a liquid, empty syringes, a spoon with a cotton ball in its bowl, empty glass vials, and two syringes containing a clear liquid. Officer Walker recognized these items as drugs and drug paraphernalia and seized them.

Northover was charged with felony possession of a controlled substance, I.C. § 37–2732(c), and misdemeanor possession of drug paraphernalia, I.C. § 37–2734A. He moved to suppress evidence seized from the bedroom, arguing that the "police had no right to be in and upon the property where the evidence was seen." The district court denied the motion. Northover pled guilty pur-

suant to I.C.R. 11, reserving his right to appeal the denial of his suppression motion.

## II.

## ANALYSIS

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which were supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). The determination of what is reasonable in a search and seizure context is a question of law over which we exercise independent review. *State v. Morris,* 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct.App.1998).

### A. Reasonable Articulable Suspicion Regarding Northover's Residence

Northover first asserts that the state failed to show that the police had "any reasonable articulable suspicion that Northover lived at that particular address." He argues, therefore, that the district court erred when it denied his motion to suppress.

In *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court stated that, for Fourth Amendment purposes, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.,* at 603, 100 S.Ct. at 1388, 63 L.Ed.2d at 661. Before the district court, Northover sought suppression of the evidence seized from his residence asserting:

The police had no right to be in and upon the property where the evidence was seen by the police in plain view; This [*sic*] is in violation of the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution.

We cannot interpret this suppression motion to include Northover's allegation of error regarding the state's proof of the officers' knowledge, or lack thereof, of whether

Northover lived at the residence. Northover's present allegation is essentially an attack on the arrest warrants themselves.[1]

■ Northover has not provided the briefing, if any, he submitted to the district court in support of his motion to suppress. According to the transcript, at no time during the hearing or upon the conclusion of Northover's suppression motion did he raise or argue the officers' reasonable suspicion to believe that he lived at the residence. Thus, from the record before this Court, we are unable to conclude that Northover's allegation of error was raised below. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge,* 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). This general rule applies to issues raised for the first time on appeal from the denial of a motion to suppress evidence. *See State v. Ryan,* 117 Idaho 504, 506, 788 P.2d 1327, 1329 (1990). Therefore, we will not consider Northover's argument that the state failed to satisfy its burden of showing that the officers had reason to believe Northover lived at the residence at the time the arrest warrants were executed.

### B. Reason to Believe Northover Was Within the Residence

■ Northover asserts that even though the police had warrants for his arrest, officer Walker could not lawfully leave the sidewalk pathway and look into the basement window of the residence. In the instant case, the officers possessed two warrants authorizing them to arrest Northover. The general rule on who bears the burden of proof with respect to an allegedly illegal search or seizure is based upon the warrant-no warrant dichotomy. *See* 5 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 11.2 at 38–39 (3d ed.1996). If a search or seizure was effected pursuant to a warrant, the defendant bears the burden of proving its illegality. *United States v. Longmire,* 761 F.2d 411, 417 (7th Cir.1985). *See also United States v. Carhee,* 27 F.3d 1493, 1496 (10th Cir.1994); *United States v. Roch,* 5 F.3d 894, 897 (5th Cir.1993); *United States*

*v. Arboleda,* 633 F.2d 985, 989 (2d Cir.1980). When a search or seizure is pursuant to a warrant, the defendant must prove, by a preponderance of the evidence, that his or her constitutional rights were violated by the search or seizure. *Roch,* at 897.

■ Northover relies on this Court's decisions in *State v. Clark,* 124 Idaho 308, 859 P.2d 344 (Ct.App.1993) and *State v. Cada,* 129 Idaho 224, 923 P.2d 469 (Ct.App.1996) for his contention that officer Walker's entry into the curtilage of the home was unconstitutional. In *Clark,* this Court held that police officers without a warrant are permitted the same intrusion and the same level of observation as one would expect from a reasonably respectful citizen. *Clark,* 124 Idaho at 313, 859 P.2d at 349. However, both *Clark* and *Cada* are factually distinguishable from the instant case in that they addressed *warrantless* intrusions onto private property within the confines of the Fourth Amendment or Article I, Section 17 of the Idaho Constitution in their discussion of the meaning of "curtilage." The same conduct that is deemed unreasonable, and thus violative of the constitution, in the absence of a warrant, may be deemed reasonable when the police are acting under the authorization of a warrant.

■ As stated above, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton,* 445 U.S. at 603, 100 S.Ct. at 1388, 63 L.Ed.2d at 661. An entry into a home to execute an arrest warrant is for the limited purpose of accomplishing the arrest of the individual named in the warrant. *See State v. Coma,* 133 Idaho 29, 32, 981 P.2d 754, 757 (Ct.App.1999). As we have held above, Northover failed to preserve any challenge regarding the issue of the officers' knowledge regarding whether Northover lived at that particular address.

---

1. We note that Northover has not included the arrest warrants or the supporting affidavits in the record on appeal. It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *State v. Murinko,* 108 Idaho 872, 702 P.2d 910 (Ct.App. 1985).

The majority of federal circuit courts of appeal agree that, under *Payton*, police officers entering a residence pursuant to an arrest warrant must demonstrate a reasonable belief that the arrestee could be found within the residence at the time of entry. *See, e.g., United States v. Route*, 104 F.3d 59, 62 (5th Cir.1997); *United States v. Risse*, 83 F.3d 212, 216 (8th Cir.1996); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir.1995); *United States v. Morehead*, 959 F.2d 1489, 1496 (10th Cir.1992), *reheard in part and aff'd. sub nom. United States v. Hill*, 971 F.2d 1461 (10th Cir.1992) (en banc). However, if a police officer may enter a suspect's house to execute an arrest warrant when the officer has reason to believe the suspect is inside, the officer may peer through windows located on the property when there is reason to believe that the suspect is on the premises. *Morehead*, 959 F.2d at 1496.

In the instant case, the officers possessed two warrants for Northover's arrest and, thus, the burden was on Northover at the suppression hearing. During the suppression motion, there was no allegation that the officers lacked reason to believe that Northover was present in the residence at the time the warrants were being executed. In fact, there was no inquiry by Northover on that issue. Although it may have been equally simple for the state to inquire into officer Walker's basis for believing Northover was present within the residence, there was no occasion for doing so because Northover did not challenge officer Walker's basis for belief that Northover was present therein. *See Arboleda*, 633 F.2d at 990.

This Court has held that when a trial court does not make explicit findings of fact, we will examine the record to determine the implicit findings that underlie the trial court's determination and uphold those implicit findings if they are supported by substantial evidence. *State v. Carr*, 123 Idaho 127, 129, 844 P.2d 1377, 1379 (Ct.App.1992). The district court's order denying Northover's motion, insofar as it pertained to the entry by officer Walker into the curtilage of the residence, stated that because the officers had probable cause to believe Northover was in his home, then the officer could look into the basement window. Although using the higher standard of probable cause, the district court implicitly found that officer Walker possessed at least a reasonable belief that Northover was in the residence at the time the arrest warrants were being executed. The facts supporting the district court's implied finding are that the basement light was on and it was approximately 8:00 p.m. Based upon the record before this Court, we cannot find error in the district court's finding. *See Morehead*, 959 F.2d at 1496 (presence of car in the carport and a truck in front of the house gave the officers reason to believe that the suspect was on the premises). *See also Route*, 104 F.3d at 63 (hearing a television and noticing a vehicle in the driveway was sufficient for officer to form reasonable belief that the suspect was within); *Lauter*, 57 F.3d 212 (information that the suspect was unemployed and typically slept late supported a reasonable belief that the suspect was within the residence when the warrant was executed); *United States v. Woods*, 560 F.2d 660, 665 (5th Cir.1977) (officer's belief that suspect was within was reasonable where it was 8:30 in the morning and the suspect was not known to be working).

Northover failed to satisfy his burden of establishing, by a preponderance of the evidence, that as officer Walker approached the residence he did not have reason to believe Northover was present therein. Thus, Northover failed to prove that officer Walker's actions of entering the curtilage and looking into the lighted basement window were unreasonable. Therefore, the district court did not err in denying Northover's suppression motion on the basis that officer Walker's entry into the curtilage was unlawful.

**C. Protective Sweep**

█ Northover asserts that, because officer Walker did not have reasonable suspicion that anyone was in the adjoining bedroom once Northover was arrested, officer Walker's search of the bedroom was unconstitutional. Northover contends that both the Fourth Amendment to the United States Constitution as well as Article I, Section 17

of the Idaho Constitution were violated by officer Walker's entry into the bedroom.

■ It is well settled that we are not required to follow United States Supreme Court precedent in interpreting Article I, Section 17 of the Idaho Constitution. *See State v. Guzman,* 122 Idaho 981, 988, 842 P.2d 660, 667 (1992); *State v. Thompson,* 114 Idaho 746, 748, 760 P.2d 1162, 1164 (1988). However, our Supreme Court has recently observed that there "is merit in having the same rule of law applicable within the borders of our state, whether an interpretation of the Fourth Amendment or its counterpart—Article I, § 17 of the Idaho Constitution—is involved. Such consistency makes sense to the police and the public." *State v. Charpentier,* 131 Idaho 649, 653, 962 P.2d 1033, 1037 (1998). Moreover, such "independent state analysis does not mean that the Court will reach a result different from the United States Supreme Court; it only means that we are free to do so, if it is determined that a different rule better effectuates our counterpart Idaho constitutional provision." *Guzman,* 122 Idaho at 988, 842 P.2d at 667. *See also Cada,* 129 Idaho at 230, 923 P.2d at 475 (citations omitted). Because Northover has not presented any cogent reason why our state constitution should be applied differently than the Fourth Amendment with respect to the search involved here, we will rely upon judicial interpretation of the Fourth Amendment in rendering our decision.

Upon entering the residence, officer Walker, while in the hallway, saw Northover exit an adjoining bedroom. Officer Walker arrested Northover, handcuffed him, and then entered the same adjoining bedroom whence Northover had exited. Upon entering the bedroom, officer Walker noticed, in plain view, contraband. Northover challenges officer Walker's entry into the bedroom.

In *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), United States Supreme Court delineated between two types of protective sweeps pursuant to a lawful arrest. As a "Type I" *Buie* protective sweep, the Supreme Court held that officers may "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately ad-

joining the place of arrest from which an attack could have been immediately launched." *Id.,* at 334, 110 S.Ct. at 1098, 108 L.Ed.2d at 286. However, a "Type II" *Buie* sweep, one that is outside the immediately adjoining area of the arrest, requires that "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* Northover contends that officer Walker's protective sweep of the bedroom was a Type II *Buie* sweep and, thus, he was required to possess articulable facts that an individual was present within the bedroom before he could lawfully enter it. However, because the state does not contend that the search of the bedroom was supported by articulable suspicion, we consider only whether a Type I *Buie* protective sweep was permissible in this case. *See In Re Sealed Case 96-3167,* 153 F.3d 759, 769–70 (D.C.Cir.1998).

■ A Type I protective sweep is analyzed "from the vantage point of the time of the arrest." *Id.* at 770. From that vantage point, it must be determined whether the place searched was one "immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie,* 494 U.S. at 334, 110 S.Ct. at 1098, 108 L.Ed.2d at 286. In the case at bar, the district court found that officer Walker arrested Northover "in the small hallway, which was three to five feet in length. The bedroom entered by officer Walker opened into the hallway and was a place immediately adjoining the place of arrest from which an attack could be immediately launched." Northover does not challenge these findings.

*United States v. Ford,* 56 F.3d 265 (D.C.Cir.1995), is factually identical to the instant case. In *Ford,* upon entering an apartment, an FBI agent saw Ford, having emerged from a back bedroom, walking down a short hallway toward the officer. The FBI agent placed Ford under arrest and then walked into the bedroom from which Ford had emerged, and observed, in plain view, contraband. The *Ford* court held that "the bedroom from which Ford emerged was im-

mediately adjoining the hallway" and, thus, the FBI agent could, as a precautionary matter and without probable cause or reasonable suspicion, legitimately look in the bedroom for potential attackers. *Id.*, at 270. In the instant case, we hold that because the bedroom searched by officer Walker was immediately adjoining the place of Northover's arrest, officer Walker could, as a precautionary matter and without probable cause or reasonable suspicion, enter the bedroom and perform a Type I *Buie* protective sweep.

Northover argues that the only reason officer Walker entered the bedroom after the arrest was because of the contraband officer Walker observed when he entered the curtilage and looked into the basement window. However, as we held above, Northover failed to establish that officer Walker's entry into the curtilage violated his constitutional rights. Therefore, what officer Walker saw from a lawful vantage point is of no consequence.

 The bedroom from which Northover exited was a place immediately adjoining the place of arrest from which an attack could have been immediately launched. Thus, officer Walker lawfully entered the bedroom to conduct a Type I *Buie* protective sweep subsequent to Northover's arrest pursuant to the warrants. Upon entering the bedroom, officer Walker observed, in plain view, the contraband which was the basis of the criminal charges in the instant case.[2] Thus, the evidence was lawfully seized.

### III.

### CONCLUSION

We hold that Northover's contention that the officers did not have reasonable articulable suspicion to believe he lived at the residence—essentially an attack on the underlying arrest warrants—was not raised before the district court and is not supported by the record on appeal. We also hold that North-

over failed to satisfy his burden of proof at the suppression hearing that officer Walker's belief that Northover was in the residence at the time the arrest warrants were executed was unreasonable. Therefore, officer Walker's entry into the curtilage was lawful. Furthermore, we conclude that officer Walker could, as precautionary matter and without probable cause or reasonable suspicion, enter the adjoining bedroom subsequent to Northover's lawful arrest pursuant to warrant and perform a Type I *Buie* protective sweep. Therefore, the order of the district court, denying Northover's motion to suppress, is affirmed.

Judge Pro Tem BURDICK, concurs.

Judge LANSING Concurring in the Result.

I join in Part II(A) and (C) of the foregoing opinion, but as to Part II(B), I concur only in the result. In my view, Part II(B) of the lead opinion does not adequately address Northover's argument that officer Walker exceeded his authority under the warrant, and thereby violated the Fourth Amendment's guarantee against unreasonable searches, when he walked onto the lawn and looked through a basement window of Northover's apartment before knocking on the door.

An arrest warrant is not the equivalent of a search warrant with respect to the authority it gives state agents to enter or to search in or around a suspect's premises. An arrest warrant authorizes an officer's entry into a suspect's residence only to the extent necessary to accomplish the purpose of the warrant, which is to effectuate the arrest of the defendant. Thus, both this Court and the Ninth Circuit Court of Appeals have held that when a suspect has answered the officer's knock on the suspect's door, and the arrest can be effectuated at the threshold, the officers may not intrude further into the

---

2. Northover does not challenge the district court's determination that the items seized were in plain view once officer Walker entered the bedroom. Under the plain view doctrine, a warrantless seizure can be justified where two requirements are met: (1) the officer must lawfully make an initial intrusion or otherwise properly be in a position to observe a particular area; and (2) it must be immediately apparent that the items observed are evidence of a crime or otherwise subject to seizure. *State v. Hagedorn,* 129 Idaho 155, 159, 922 P.2d 1081, 1085 (Ct.App. 1996).

house to put the officers at a vantage point from which they can more fully observe the premises. *United States v. Albrektsen,* 151 F.3d 951 (9th Cir.1998); *State v. Coma,* 133 Idaho 29, 981 P.2d 754 (1999); *State v. Peterson,* 108 Idaho 463, 465, 700 P.2d 85, 87 (Ct.App.1985). In *Peterson,* we stated that an entry greater than that necessary to effectuate the arrest would require a reasonable justification, "such as consent to a search, response to an emergency, hot pursuit of a fleeing felon, for safety purposes where a serious and demonstrable potential for danger exists, or to prevent destruction or removal of evidence." *Id.* With this limitation being applicable to the *entry* of premises pursuant to an arrest warrant, logic would dictate that, concomitantly, an arrest warrant does not automatically give officers *carte blanche* authority to search the grounds around the home or to intrude onto the private curtilage in order to peer into windows where the officers have not first ascertained whether the suspect will respond to a knock on the door and submit to arrest.

Nonetheless, the majority opinion seems to find such unrestricted search authority to be inherent in an arrest warrant. The majority opinion suggests no limitation upon an officer's authority to survey the home's exterior and look through windows so long as the officer has an arrest warrant and reasonable suspicion to believe that the suspect is on the premises. However, the sole authority upon which the lead opinion relies for that proposition, *United States v. Morehead,* 959 F.2d 1489 (10th Cir.1992), is inapposite. In *Morehead,* the officers had already knocked on the front door and received no response *before* they walked to the back of the house in search of the suspects named in the arrest warrants. The Tenth Circuit Court of Appeals held that this intrusion onto the private curtilage area was justified in order to accomplish execution of a valid arrest warrant. The result in *Morehead* is clearly correct and consistent with the United States Supreme Court's holding in *Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639, 661 (1980), that an arrest warrant carries with it the limited authority to enter a dwelling to search for a suspect. If a suspect has failed to respond to officers who have knocked on the front door and announced their presence, then, most assuredly, officers with an arrest warrant must have authority to search both the interior and exterior areas of the residence where the suspect might be hiding. The Fourth Amendment does not confer upon the subject of an arrest warrant a right to evade arrest by simply refusing to answer the officer's knock. However, neither *Morehead* nor the logic underlying that decision answers the issue presented in the present case because the police officers here did not knock first, to ascertain whether Northover would respond, before officer Walker intruded upon the private curtilage and conducted a search by looking through Northover's window.

Although I am unwilling to join in the majority's broad ruling, I would not hold that officers with an arrest warrant may never enter the private curtilage, look around the premises, or look into windows before knocking on the suspect's door. As we recognized in *Peterson,* the circumstances of the particular case, including demonstrable danger to officers or prevention of the destruction or removal of evidence, may legitimize more intrusive police activity. The need to guard against a possible attempt by the suspect to escape through a window or a back door may also justify officers in going to the sides or rear area of a residence before other officers announce their presence at the front entrance.

Northover's suppression motion raised the question as to whether any such justification for intrusion onto the curtilage existed in his case. His motion was properly denied, however, because Northover's evidence did not demonstrate the absence of such a justification. As the lead opinion notes, because the officers were acting under the authority of a warrant, the burden was on Northover to prove that officer Walker's behavior in stepping a few feet off the path to the front door and looking through an uncovered window was unreasonable. In my judgment, he has not met this burden. Northover did not place in evidence the arrest warrants that the officers were executing, and did not otherwise present evidence of the crimes for which the warrants had been issued. There-

fore, neither this Court nor the trial court can discern whether they were crimes of violence that might cause concern for officer safety. Nor did Northover present any evidence as to whether he otherwise had a police record of violence or presenting a threat to officers. In addition, if Northover had a history of destroying or attempting to destroy evidence when approached by officers, then an officer's surveillance of the interior before knocking on the door might have been justified. Northover did not disprove this possible justification. In positing these hypothetical justifications and pointing out the absence of proof to the contrary, I do not suggest that a defendant must prove a negative, *i.e.*, disprove all possible theoretical justifications for the officers' conduct. Rather, the defendant's burden can be met by simply posing a direct question to the officers at the suppression hearing asking them to explain why they took the challenged action. If their response does not present a valid reason for the intrusion, the defendant's burden will be met. Northover did not make this inquiry, and therefore did not meet his burden of proving that officer Walker's conduct was unreasonable and hence a violation of the Fourth Amendment. Accordingly, I concur with the affirmance of the district court's order denying Northover's suppression motion.