90 P.3d 935

STATE of Idaho, Plaintiff–Respondent,

v.

Richard SHELLENBARGER,
Defendant–Appellant.

No. 29561.

Court of Appeals of Idaho.

May 6, 2004.

Molly J. Huskey, State Appellate Public Defender; Sara B. Thomas, Chief Appellate Unit, Boise; Heidi K. Koonce, Legal Aid Clinic, Moscow, for appellant. Heidi K. Koonce, Legal Intern, argued.

Hon. Lawrence G. Wasden, Attorney General; Kristina Marie Schindele, Deputy Attorney General, Boise, for respondent. Kristina Marie Schindele argued.

PERRY, Judge.

Richard Shellenbarger appeals from the judgment of conviction entered by the district court after he conditionally pled guilty to possession of methamphetamine. We affirm.

## I.

### FACTS AND PROCEDURE

During the early morning hours of November 5, 2002, a police officer on patrol noticed a blue van parked at an odd angle in a motel parking lot as if the van had been abandoned. The officer checked the license plate and discovered that the plate was registered to a black Mazda pickup owned by Shellenbarger. The officer became concerned that the van, displaying fictitious plates, might be stolen. The officer discovered also that Shellenbarger was wanted on two Ada County warrants for a probation violation and failure to appear. The officer informed a fellow officer about the situation and both went to the motel to investigate.

Observing that the van was parked directly in front of a particular motel room with lights on inside, the officers knocked on the door. Shellenbarger, who was inside the room, came to the door and asked who was there. The officers responded that they were police. Shellenbarger opened the door and was told that the officers were concerned that the van might be stolen. Shellenbarger informed them that he was the van's owner and, upon request for identification, provided his driver's license. During the contact, the officers stood outside the door while Shellenbarger

stood inside the open doorway, two to three feet from the officers.

After confirming Shellenbarger's identity, one officer ran a status check and confirmed the two warrants for Shellenbarger's arrest. Although the warrants were restricted to arrest in public places only, this was not made known to the officer at that time. Upon confirmation of the warrant, the other officer stepped into the doorway, informed Shellenbarger that he was under arrest, and placed him in handcuffs. Shellenbarger told the officers that no one else was in the room and consented to a check of the bathroom to ensure that no one was there. While checking the bathroom, officers observed drug paraphernalia and methamphetamine.

Shellenbarger was charged with possession of methamphetamine. I.C. § 37–2732(c)(1). Prior to trial, he filed a motion to suppress, claiming that the arrest was illegal on the grounds that, although unknown to the officers at the time, the warrants were limited to execution in any public place. Shellenbarger argued that officers failed to comply with the restriction on the warrants because the doorway to his motel room was not a public place. The motion to suppress was denied. Shellenbarger conditionally pled guilty, reserving the right to appeal the denial of his suppression motion. The district court entered a judgment of conviction and sentenced Shellenbarger to a seven-year term of imprisonment, with two years fixed. Shellenbarger's sentence was suspended, and he was placed on probation. On appeal, Shellenbarger argues that the district court erred when it denied his motion to suppress.

## II.

### ANALYSIS

■ Shellenbarger contends that the evidence discovered in the motel room should have been suppressed. He argues that the police violated the public place only conditions placed upon the warrants when they arrested him in the motel room doorway, thereby invalidating the subsequent search. The state asserts that Shellenbarger voluntarily exposed himself to a public place when he opened the door and remained in the doorway during his encounter with the officers.

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

■ The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. Generally, the police may not enter a suspect's home to make an arrest without a warrant or consent. *State v. Christiansen,* 119 Idaho 841, 843, 810 P.2d 1127, 1129 (Ct. App.1990). Fourth Amendment protections extend to temporary homes such as motel rooms. *State v. Hall,* 132 Idaho 751, 753, 979 P.2d 624, 626 (1999).

■ While police have broad power in executing an arrest warrant, this power may be restricted by the issuing judge, who may establish conditions under which the warrant may be executed. *Id.* at 753, 979 P.2d at 626. Limiting execution of the warrant to any public place may be accomplished by marking such limitation on the face of the warrant. *Id.* Execution of an arrest warrant with disregard for the public place only limitation is equivalent to a warrantless entry, which is prohibited. *Id.* at 754, 979 P.2d at 627.

The United States Supreme Court has held that a person standing inside the open doorway of a house is as exposed to public view, speech, hearing, and touch as if standing completely outside the house. *See United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300, 305 (1976). In *Santana,* officers possessed probable cause to believe that Santana had sold illegal

drugs. They drove to Santana's house and saw her standing directly in the doorway. The officers exited their vehicle and shouted "police" as they approached the house. Santana retreated into the vestibule and dropped packets containing heroine onto the floor. Officers followed her into the home, made a warrantless arrest, and discovered marked drug purchase money in her pockets. Santana's motion to suppress the drugs and money was granted. On appeal, the Supreme Court reversed. Stating that the warrantless arrest of an individual in a public place upon probable cause did not violate the Fourth Amendment, the Court held Santana had no expectation of privacy while standing in the open doorway and was considered to be in a public place. *Id.; see also State v. Wren,* 115 Idaho 618, 623, 768 P.2d 1351, 1356 (Ct.App. 1989) (if person standing in partially obscured porch remains visible from street, alley, or adjacent property, a reasonable expectation of privacy does not exist and porch will be treated as a public place).

In this case, Shellenbarger was standing in the open doorway of the motel, two to three feet from the officers.[1] Under *Santana,* Shellenbarger was in a public place. However, Shellenbarger contends that, when a person opens a door in response to police-initiated contact, that person cannot be said to have voluntarily entered into a public place. Citing *Christiansen,* Shellenbarger contends that he was therefore not subject to arrest under the warrants.

In *Christiansen,* this Court was asked to decide whether a warrantless arrest is invalid when a suspect leaves the privacy of his residence in response to police knocking at the door, attempting to break in the door, and commanding the suspect to exit. The Court held that the suspect, in that situation, came out of the home as a result of police compulsion, rendering the warrantless arrest

invalid. *Christiansen,* 119 Idaho at 844, 810 P.2d at 1130.

The present case differs significantly from the facts in *Christiansen.* Here, there was no police compulsion. The officers knocked on the door and identified themselves as police. Shellenbarger opened the door and spoke to the officers with apparent cooperation. He remained in the doorway while one officer took his driver's license to confirm the warrants. The officers stepped into the doorway to make the arrest. Thus, Shellenbarger's reliance on *Christiansen* is misplaced. Shellenbarger has not shown that he was compelled to enter the doorway.

Even when law enforcement officers use trickery to lure a wanted individual from a private residence into a public place, leaving the residence has been considered voluntary and the individual's subsequent arrest held to be valid. *See State v. Bentley,* 132 Idaho 497, 499–500, 975 P.2d 785, 787–88 (1999). In *Bentley,* officers knew Bentley had an outstanding misdemeanor warrant authorizing his arrest in a public place only. To induce Bentley to leave his house, officers knocked on the door and asked his mother if they could talk to him. When he came to the door, the officers asked Bentley to get his vehicle registration out of his car because it had been cancelled. After reluctantly going outside, Bentley was arrested. During a search pursuant to the arrest, drugs were found in his pocket. Bentley was charged with drug offenses and filed a motion to suppress, challenging the validity of his arrest. The motion was denied. On appeal, the Idaho Supreme Court affirmed, concluding that Bentley was not compelled to leave his home and voluntarily did so. The Court held that the subsequent arrest in his driveway was valid.

In this case, as previously stated, officers knocked at Shellenbarger's motel room door and identified themselves as police. Without compulsion and not in response to trickery,

1. Shellenbarger claims that he was two to three feet inside the motel room. However, the record as to his position within the doorway is unclear. The officers testified that they were outside the door, two to three feet from Shellenbarger. If the officers were standing two feet from the threshold, Shellenbarger would have been either on the threshold or within a foot of the threshold.

The arresting officer testified that he took one step into the doorway, placing him into the doorway a distance equal to half the length of the door. Regardless of whether Shellenbarger was on the threshold or two to three feet from the threshold, he was in the open doorway and, under *Santana,* was in a public place.

Shellenbarger voluntarily opened the door and spoke with the officers while standing in the doorway. Thus, Shellenbarger's claim that he involuntarily entered a public place is without merit. Furthermore, other jurisdictions addressing the issue have concluded that officer-initiated doorway arrests in similar circumstances, and in warrantless cases, are valid. *See McKinnon v. Carr,* 103 F.3d 934, 935–36 (10th Cir.1996) (arrest valid where police knocked, identified themselves as police, neither displayed nor threatened violence, and arrested suspect in doorway when suspect opened door); *United States v. Vaneaton,* 49 F.3d 1423, 1425–27 (9th Cir. 1995) (doorway arrest valid where uniformed police knocked at motel door, suspect opened curtain to look at officers, and voluntarily opened door); *United States v. Botero,* 589 F.2d 430, 432–33 (9th Cir.1978) (arrest valid where police knocked, suspect answered door, and police immediately arrested suspect in doorway); *People v. Burns,* 200 Colo. 387, 615 P.2d 686, 687–89 (1980) (doorway arrest valid where officers knocked, identified themselves as police and arrested suspect when he opened the door); *Byrd v. State,* 481 So.2d 468, 469–72 (Fla.1985) (doorway arrest valid where police knocked, identified themselves as police, and arrested suspect when he voluntarily answered door and stepped back to allow police entry); *People v. Morgan,* 113 Ill.App.3d 543, 69 Ill.Dec. 590, 447 N.E.2d 1025, 1026–28 (1983) (doorway arrest valid where suspect was told police wanted to speak with him and was arrested when he voluntarily came to the door).

■ Finally, Shellenbarger claims that the Fourth Amendment prohibited the officers from stepping over the threshold to make the arrest. He argues that the police violated Shellenbarger's right to privacy in a way similar to the circumstances in *State v. Peterson,* 108 Idaho 463, 700 P.2d 85 (Ct.App. 1985). In *Peterson,* several law enforcement officers, possessing a warrant for Peterson's arrest, knocked on the door. When Peterson answered, they informed him of the warrant and asked permission to enter. Peterson responded that they could enter only if they had a search warrant. The officers entered without a search warrant, read the warrant for Peterson's arrest, made a protective sweep, and eventually found cocaine. Peterson's motion to suppress was denied. On appeal, the Court held that entry into Peterson's house, without a search warrant and when he could have easily been arrested on his doorstep, violated his Fourth Amendment rights. However, the Court's decision was based on its conclusion that, where there is no impediment to making an arrest in a doorway and the arrestee does not attempt to retreat into the house, officers may not intrude into a house over the objection of the arrestee simply to complete the arrest where they can more fully observe the interior of the house. *Peterson,* 108 Idaho at 465, 700 P.2d at 87.

Under the facts of the present case, *Peterson* is not applicable. The Court's focus in *Peterson* was on its concern with officers delaying an arrest in order to position themselves inside a home for a better look inside. In this case, the officers took only one step inside the doorway, informed Shellenbarger that he was under arrest, placed him in handcuffs, and asked permission to check the bathroom for other persons. Shellenbarger consented to the search. Shellenbarger has not shown, and the testimony does not indicate, that the officers arrested him in an area beyond the open doorway. Shellenbarger has failed to demonstrate that his arrest was unlawfully made in violation of the restrictions on warrants for his arrest or in violation of the Fourth Amendment. Additionally, he has not shown that his consent to the subsequent search was tainted or that the search was invalid.

### III.

### CONCLUSION

For the foregoing reasons, we conclude that Shellenbarger has failed to show that the district court erred when it denied his motion to suppress the evidence found after his arrest and pursuant to the subsequent consensual search. Shellenbarger's judgment of conviction is affirmed.

Chief Judge LANSING and Judge GUTIERREZ concur.