**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49019**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Filed:  December 1, 2022** |
| Plaintiff-Appellant, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | |
| DOUGLAS JAMES SIMANTON, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County.  Hon. Darren B. Simpson, District Judge.

The district court's order granting motion to suppress, <u>reversed</u> and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for appellant.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for respondent.

_____

GRATTON, Judge

The State appeals from the district court's order granting Douglas James Simanton's motion to suppress evidence.  The district court found the traffic stop of Simanton was invalid due to lack of reasonable suspicion that the driver of the vehicle was the registered owner of the vehicle who had an outstanding arrest warrant.  The State argues there was reasonable suspicion for the traffic stop due to the officer's reasonable belief the driver was the registered owner of the vehicle.  Simanton requests this Court affirm the district court on the alternative basis that the officer unlawfully extended the duration of the stop upon discovering the jail was not accepting misdemeanor warrant arrestees.  We reverse and remand.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

While on patrol, Idaho State Police Trooper Gurney observed a male driver in a truck, "very agitatedly slam[] down a silver can that appeared to [him] to be a Coors tall boy." Dispatch informed Trooper Gurney that the registered owner of the truck, Douglas James Simanton, had an outstanding misdemeanor arrest warrant. Trooper Gurney initiated a traffic stop and made contact with the driver, Simanton. Trooper Gurney explained he believed he saw a beer can in Simanton's possession. Simanton showed Trooper Gurney an Arizona Iced Tea can in the cup holder. Trooper Gurney collected Simanton's information and verified he was the registered owner of the truck. Dispatch then informed Trooper Gurney that the jail would not accept arrestees due to COVID-19 restrictions.

Subsequently, Trooper Gurney had Simanton step out of his vehicle. Trooper Gurney asked Simanton about his nervous behavior, whether it had to do with his active warrant, or some other issue with the vehicle. Trooper Gurney reassured Simanton that the jail was "not really taking anyone" at the time. Trooper Gurney asked Simanton if a drug dog would alert on his vehicle. Simanton confirmed that it would. At this time, a K-9 unit was already en route to the stop. Trooper Gurney asked Simanton if he had anything on his person to which Simanton responded by pulling a new glass pipe out of his pocket and handing it to Trooper Gurney. Trooper Gurney recognized the glass pipe as one primarily used to smoke methamphetamine. Trooper Gurney then searched Simanton's vehicle and discovered a "user amount of methamphetamine" among other items. Field sobriety testing on Simanton led the officer to conclude that Simanton was impaired. The State charged Simanton with possession of methamphetamine, possession of marijuana, driving while under the influence, possession of drug paraphernalia, and unlawful transportation of an open container of alcohol.[1]

Simanton filed a motion to suppress all evidence obtained during his detention. Simanton argued that although an active misdemeanor warrant on the registered driver of a vehicle "may rise to reasonable suspicion[,]" Trooper Gurney unlawfully extended the detention after being informed that the jail was not accepting misdemeanor warrant arrestees at the time. The State filed an opposition to the motion to suppress asserting Trooper Gurney did not unlawfully extend the traffic stop and that Simanton conceded there was reasonable suspicion for the traffic stop. The district court held a hearing on the motion to suppress. At the end of the hearing, the district court expressed concern about reasonable suspicion for the traffic stop, which both the State and Simanton addressed in their closing arguments.

---

[1]     This charge was unrelated to the Arizona Iced Tea can observed by the officer.

After the suppression hearing, the district court entered an order granting Simanton's motion to suppress, ruling that the stop was not supported by reasonable suspicion under *State v. Cerino*, 141 Idaho 736, 117 P.3d 876 (Ct. App. 2005), and that *Kansas v. Glover*, 140 S. Ct. 1183 (2020), was factually distinguishable. The State timely appealed.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The State argues the district court erred when it granted Simanton's motion to suppress because there was reasonable suspicion to support the traffic stop. Simanton argues that the district court should be affirmed on the alternative ground that the officers unlawfully extended the stop.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003).

The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

3

Although Simanton argued below and now on appeal that the stop was unlawfully extended, we note that the district court held there was no reasonable suspicion for the traffic stop of Simanton's vehicle. The district court found the silver can was too commonplace to reasonably suggest Simanton had an open alcoholic beverage. Next, relying on *Cerino*, 141 Idaho 736, 117 P.3d 876, the district court held that, without more corroborating information, reasonable suspicion could not be based merely on an assumption that a registered owner of a vehicle would be driving the vehicle.

The State argues that the district court misinterpreted *Glover*, which supports the legal conclusion that Trooper Gurney validly stopped Simanton. We agree with the State that the district court erred in its reasonable suspicion analysis by narrowing the scope of *Glover*.[2] *Glover* involved a traffic stop conducted after the officer determined the registered owner of the observed vehicle had a revoked license and the model of the truck matched the observed vehicle. The United States Supreme Court held:

> From these three facts, [the officer] drew the commonsense inference that Glover was likely the driver of the vehicle, which provided more than reasonable suspicion to initiate the stop.
> The fact that the registered owner of a vehicle is not always the driver of the vehicle does not negate the reasonableness of [the officer's] inference. Such is the case with all reasonable inferences. The reasonable suspicion inquiry "falls considerably short" of 51% accuracy, *see United States v. Arvizu*, 534 U.S. 266, 274 (2002), for, as we have explained, "[t]o be reasonable is not to be perfect." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014).

*Glover*, 140 S. Ct. at 1188. The Supreme Court emphasized that the totality of the circumstances still applied and if the officer had evidence which would negate the inference that the registered owner was also the current driver, then the reasonable inference would dissipate. *Id.* at 1191. In *Glover*, "[the officer] possessed no exculpatory information--let alone sufficient information to rebut the reasonable inference that Glover was driving his own truck--and thus the stop was justified." *Id.* Based upon *Glover*'s holding that it is reasonable to infer the driver of the vehicle

---

2       The State raises two procedural arguments. First, the State argues that Simanton waived his challenge to the traffic stop when he wrote in his motion brief that the registered owner of a vehicle with an active warrant "may" have been enough for a traffic stop. "May" indicates Simanton recognized there was a possibility that reasonable suspicion existed but purposefully avoided conceding the point. Simanton did not waive the issue below. Next, the State argues Simanton waived his challenge on appeal because his respondent's brief did not address the issue of the initial stop. It is the burden of the appellant to prove error by the lower court on appeal, *State v. Garcia-Rodriguez*, 162 Idaho 271, 276, 396 P.3d 700, 705 (2017), not the respondent.

4

is also the registered owner without other dispelling information, reasonable suspicion supported the stop of Simanton's vehicle based on the outstanding arrest warrant for Simanton.

Conversely, *Cerino* does not apply. *Cerino* involved a traffic stop conducted after the officer observed the vehicle in question was "registered to a male and a female, that the male registrant did not possess an Idaho driver's license, and that a male was presently driving the vehicle." *Cerino*, 141 Idaho at 738, 117 P.3d at 878. In *Cerino*, this Court found it important that the only information the officer had was that the gender of the driver matched the gender of the registered owner. *Id.* This Court explained there was no physical description of the registered owner or anything more than gender to infer the registered owner was driving. *Id.* *Cerino* held that under the Fourth Amendment it is not reasonable to infer the registered owner of the vehicle is also the driver unless there is more information, such as a physical description to compare. *Id.* On the other hand, *Glover* held that it is reasonable to infer the registered owner of the vehicle is driving unless exculpatory information contradicts that assumption. Since the United States Supreme Court is the final arbiter of the Fourth Amendment, *Cerino* must be overruled to the extent it does not align with *Glover*. *See Baker v. Carr*, 369 U.S. 186, 211 (1962).

As a result, it was reasonable for Trooper Gurney to infer Simanton was driving his own vehicle. The district court concluded this was insufficient for reasonable suspicion even under *Glover* reasoning that *Glover* requires specific criminal activity, such as a suspended license, whereas driving with an outstanding warrant is not specific criminal activity. The State contends an arrest warrant suffices as reasonable suspicion for a traffic stop if there is reason to believe the arrestee is in the vehicle. In *State v. Bromgard*, 139 Idaho 375, 379, 79 P.3d 734, 738 (Ct. App. 2003), this Court held that an officer may stop a vehicle to effectuate an arrest pursuant to a valid warrant when there is reason to believe the arrestee is in the vehicle. This holding is consistent with federal authority applying the Fourth Amendment, which holds officers can stop a vehicle to execute a warrant when they reasonably believe the subject of the warrant is in the vehicle. *See United States v. Nault*, 41 F.4th 1073, 1079 (9th Cir. 2022); *United States v. Ellison*, 462 F.3d 557, 563 (6th Cir. 2006); *United States v. O'Connor*, 658 F.2d 688, 691 (9th Cir. 1981).

Accordingly, when Trooper Gurney learned that the registered owner of the vehicle, Simanton, had an active warrant, under *Bromgard*, the active warrant was enough for Trooper Gurney to stop the vehicle if it was reasonable to believe Simanton was in the vehicle. Pursuant to *Glover*, it was reasonable for Trooper Gurney to infer Simanton would be driving his own

5

vehicle. As such, Trooper Gurney conducted a valid traffic stop of Simanton based on Simanton's active warrant. The district court erred by finding there was not reasonable suspicion for the traffic stop.

Simanton requests this Court affirm the district court under the theory that Trooper Gurney unlawfully extended the duration of the stop. Simanton contends this Court can affirm the district court because this case satisfies the conditions to apply the right-result, wrong-theory doctrine of appellate review. To apply the right-result, wrong-theory doctrine, we must ensure that both parties had an adequate opportunity to present evidence and argument to the district court on the theory advanced on appeal, which in this case is the alleged unlawful extension of the stop. *State v. Hoskins*, 165 Idaho 217, 222, 443 P.3d 231, 236 (2019). Simanton's motion to suppress said little about reasonable suspicion for the traffic stop and largely focused on this argument--the alleged unlawful extension of the stop. The State responded to this argument. At the suppression hearing, both the State and Simanton addressed whether there was an unlawful extension of the stop until the district court posited the question about reasonable suspicion. It was only then that the direction of the argument shifted. Both parties discussed the extension of the stop in their appellate briefing, and the appellate record includes the motions and briefs before the district court, the transcript of the suppression hearing, and the dash camera footage from the patrol vehicle. Moreover, neither party contends there are any facts in dispute relating the extension of the stop that should be first determined by the district court. Further, in its reply brief, the State does not contend that analysis under the right-result, wrong-theory doctrine is inappropriate in this case. We are satisfied that both parties had an adequate opportunity to present evidence and argument on the issue and the record is sufficient for us to address Simanton's request to affirm on this alternative theory.

Simanton argues Trooper Gurney illegally extended the duration of the traffic stop pursuant to *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). Simanton contends there were two purposes for the traffic stop: (1) open alcoholic beverage, and (2) outstanding arrest warrant. Trooper Gurney quickly determined that what he thought was a "Coors tall boy," was a can of iced tea, so the purpose of a traffic stop on that basis ended immediately. As to the second purpose, Simanton argues once Trooper Gurney learned the jail was not accepting misdemeanor warrant arrestees, his purpose for the stop based on the arrest warrant also ended. Simanton contends that because all

6

inquiries into illegal substances were after the original purposes of the stop ended, evidence gained as a result of those inquiries was the product of an illegal extension of the stop.

The State responds that whether the jail was receiving misdemeanor warrant arrestees was immaterial to the legality of the detention, which was supported by a valid arrest warrant. Although not directly analyzing the extension of the stop issue, the district court agreed that whether the jail was receiving inmates was irrelevant to whether Simanton's detention was constitutionally reasonable.

The Idaho Supreme Court has explained the *Rodriguez* application and illegal extensions of a traffic stop:

> The United States Supreme Court has plainly established that a traffic stop is a seizure, but it is not an unreasonable seizure under the Fourth Amendment so long as there is a reasonable suspicion that the vehicle is being driven contrary to traffic laws. The stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop, to which that reasonable suspicion is related. However, should the officer abandon the purpose of the stop, the officer no longer has that original reasonable suspicion supporting his actions Indeed, when an officer abandons his or her original purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment.

*State v. Linze*, 161 Idaho 605, 609, 389 P.3d 150, 154 (2016) (citation omitted). As previously discussed, Trooper Gurney had reasonable suspicion that Simanton was driving his vehicle and had an outstanding arrest warrant. Trooper Gurney pursued this purpose when he asked Simanton for documentation and identification at the beginning of the traffic stop. Once Trooper Gurney confirmed Simanton was indeed the driver and had an outstanding warrant, there was probable cause to arrest Simanton. An arrest warrant is a judicial order to arrest a subject. I.C. § 19-507; *Illinois v. Gates*, 462 U.S. 213, 262 n.16 (1983). Accordingly, *Rodriguez* is inapplicable because the circumstances no longer involved a traffic stop but a valid arrest warrant.

Simanton argues *State v. Lee*, 162 Idaho 642, 402 P.3d 1095 (2017), supports his contention that the inability to place Simanton in jail is significant. In *Lee*, the threshold question was whether an officer could legally conduct a search incident to arrest when the officer expressly had no intention to arrest the individual (although he could have) and wrote a citation instead. *Id.* at 650, 402 P.3d at 1103. The Idaho Supreme Court determined that without the actual arrest, there was no justifying rationale for a search incident to arrest. *Id.* at 652, 402 P.3d at 1105.

The State responds that *Lee* is inapplicable to the circumstances of this case because Simanton provided Trooper Gurney the probable cause to conduct the search of his vehicle. We agree with the State. After Trooper Gurney asked Simanton to step out of the vehicle, he asked Simanton whether the drug dog would alert on his vehicle. Simanton confirmed the dog would alert. Trooper Gurney then asked if Simanton had anything on his person and Simanton pulled a new glass pipe out of his pocket commonly used to smoke methamphetamine.

Trooper Gurney's question about whether the drug-detection dog would alert on Simanton's truck, and Simanton's answer (including the follow-up as to whether he had anything on his person), were made while Simanton was legally in Trooper Gurney's custody pursuant to the misdemeanor arrest warrant. The misdemeanor arrest warrant mandated that Trooper Gurney arrest (take into custody) Simanton on the warrant. The fact that the jail informed Trooper Gurney that it was not accepting misdemeanor warrant arrestees neither negated that order nor meant that Simanton was not in custody on the warrant until such time as Trooper Gurney released him to his home.

In sum, there was reasonable suspicion that Simanton was driving his vehicle and was subject to an outstanding arrest warrant. The traffic stop of Simanton was valid. Once Trooper Gurney confirmed Simanton's identity, there was probable cause under the arrest warrant to further detain Simanton. *Rodriguez* and the narrow scope of the traffic stop no longer applied. Simanton acknowledged that the drug dog would alert on his car and subsequently handed Trooper Gurney a glass pipe. These admissions provided probable cause for the search of his vehicle and the collection of evidence. The district court erred when it granted Simanton's motion to suppress.

## IV.

## CONCLUSION

The district court erred when it found there was no reasonable suspicion to conduct the traffic stop of Simanton. The traffic stop was not unlawfully extended. Accordingly, we reverse the district court's order granting Simanton's motion to suppress and remand for further proceedings.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.