**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50627**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 16, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| MYKOLA V. MAGOMADOV, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Derrick J. O'Neill, District Judge.

Order denying motion to suppress, <u>affirmed</u>; judgment of conviction, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant. Jacob L. Westerfield argued.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

HUSKEY, Judge

Mykola V. Magomadov appeals from his judgment of conviction for possession of a controlled substance, possession of drug paraphernalia, and a persistent violator sentencing enhancement. Magomadov argues the district court erred in denying his motion to suppress because officers unlawfully extended the duration of his detention prior to the discovery of contraband. The district court did not err in denying Magomadov's motion to suppress because the officers had probable cause to arrest Magomadov. The order denying Magomadov's motion to suppress and his judgment of conviction are affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

While on patrol one evening, Officer Gilliam and Officer Gould saw Magomadov behind a closed business. Magomadov was collecting items from a donation bin or trash, and his vehicle

1

was parked nearby. Both officers exited their patrol vehicle, approached Magomadov, and asked him to come over and speak with them. Magomadov complied and told the officers that he was digging through the garbage and had a mirror (presumably from the donation bin or trash) that was in the back seat of his vehicle. The officers asked Magomadov if he had any drugs or weapons on his person; Magomadov stated he did not. The officers requested permission to perform a *Terry v. Ohio*, 392 U.S. 1 (1968) pat-down search, but Magomadov refused consent. The officers then asked for Magomadov's driver's license, which he provided. Officer Gould ran Magomadov's driver's license through dispatch and asked Magomadov for permission to search his vehicle, but Magomadov refused permission. Officer Gilliam asked dispatch to send a K-9 unit to the scene.

The officers asked Magomadov if he was on probation or parole, which Magomadov denied; Magomadov then admitted he had been on probation in the past for a drug-related offense. The Idaho Department of Correction website showed Magomadov was on probation until June 22, approximately three months after the date of the stop. After another officer (Officer Coils) arrived to provide assistance, Officers Gilliam and Gould went to their patrol vehicle to access the computer system to confirm the information previously provided by dispatch and to call probation and parole to verify Magomadov's probation status.

While Officers Gilliam and Gould were verifying Magomadov's probation status, K-9 Officer Johnson arrived on scene. On his way to the other officers, Officer Johnson walked past Magomadov's vehicle and observed a baggie of suspected methamphetamine on the driver's seat. After Officer Johnson informed the other officers of the baggie, Officers Gilliam and Gould exited their patrol vehicle, walked to Magomadov's vehicle, observed the baggie of suspected methamphetamine, and then arrested Magomadov. The officers searched Magomadov's vehicle and discovered the baggie of methamphetamine and drug paraphernalia.

The State charged Magomadov with possession of a controlled substance, Idaho Code § 37-2732(c), possession of drug paraphernalia, I.C. § 37-2734, and disorderly conduct, Boise City Code 5-2-3. The State also alleged Magomadov is a persistent violator, I.C. § 19-2514. Magomadov filed a motion to suppress, arguing that the officers delayed the investigation of the possible theft and disorderly conduct to allow the K-9 unit to arrive at the scene. Following a hearing on the motion to suppress, the district court denied Magomadov's motion, finding that there was no delay while waiting for the K-9 unit to arrive on scene and that there were safety concerns present during the stop which warranted the pace at which the investigation and arrest

took place. A jury found Magomadov guilty of possession of a controlled substance and possession drug of paraphernalia, and acquitted Magomadov of the disorderly conduct charge. Magomadov then admitted to the persistent violator enhancement. Magomadov appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Whether probable cause exists is a question of law which we review de novo with deference given to the facts found by the trial court. *State v. Weber*, 116 Idaho 449, 451-52, 776 P.2d 458, 460-61 (1989).

## III.

## ANALYSIS

Magomadov argues that the district court erred by denying his motion to suppress because the officers violated his rights under the Fourth Amendment of the United States Constitution by unlawfully extending the duration of Magomadov's detention by spending time re-verifying probation information they had already obtained. Magomadov further argues that the district court erred in analogizing the stop to a traffic stop because Magomadov was outside his vehicle and thus, any safety concerns were significantly curtailed. Magomadov asserts the officers' inquiry regarding Magomadov's probation status was not reasonably related to officer safety.[1] Finally,

---

[1] Although Magomadov contends that the extension of his detention resulted in an unlawful seizure that violated both federal and state constitutions, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution, except as it relates to the good-faith exception to the exclusionary doctrine. Therefore, this Court will rely on judicial interpretation of the Fourth Amendment in its analysis of whether Magomadov's Fourth Amendment rights were violated. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

Magomadov argues that the district court erred in allowing the officers to rely on the information regarding Magomadov's probation status because to do so would amount to permitting a good-faith exception to the warrant requirement, which Idaho has rejected. The State responds that the district court properly concluded the investigative stop was not unreasonably extended because the officers could inquire about Magomadov's probation status as an ordinary inquiry related to the stop and for officer safety concerns. The State also argues that the officers had reasonable suspicion that Magomadov was on probation, justifying a detention to confirm or dispel that suspicion. Finally, the State argues that Magomadov's Fourth Amendment rights were not violated because the officers had probable cause to arrest him early in the encounter and there is no requirement that an arrest be completed within any particular period of time.

The district court held that Magomadov failed to establish there was an unlawful extension of his detention. However, the district court did not rule on the State's alternate argument that the officers had probable cause to arrest Magomadov early in the encounter and thus, there was no Fourth Amendment violation. Where one of the parties advances multiple theories below, but the district court comes to its decision based upon only one of those theories, this Court has required two criteria be met before upholding the decision based on the unconsidered theory. *State v. Hoskins*, 165 Idaho 217, 222, 443 P.3d 231, 236 (2019). First, since the district court did not reach the alternative theory, we "must be satisfied that the parties had adequate opportunity to present evidence and arguments on the alternative issue." *Id*. Second, "the theory on which the lower court decides the issue must not reroute the course of proceedings so that the alternate base does not have a chance to be litigated." *Id*. In other words, "the affected party must have the reason and the opportunity to properly respond to the alternate grounds." *Id*.

In Magomadov's briefing in support of his motion to suppress, Magomadov argued that the officers continued questioning him for approximately thirteen minutes despite needing no additional evidence for either the disorderly conduct or petit theft charge. Magomadov argued that instead of arresting or writing Magomadov a citation, the officers engaged in a "fishing expedition." The State responded that in the first two minutes of contact, the officers established probable cause to arrest Magomadov for disorderly conduct when Magomadov admitted that he did not have a lawful purpose to be on the property and did not have permission from the business owner to be present on the property after hours. The State reasoned that because the officers had

already established probable cause to arrest Magomadov for disorderly conduct, there was no subsequent delay in Magomadov's detention that violated his constitutional rights.

At the hearing on his motion to suppress, Magomadov argued that: "I think the testimony today also implicates a potential [*State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019)] issue in that the officers can't definitely say that they saw my client commit a crime that night in their presence." In response, the State relied on its briefing, arguing that the officers did not violate Magomadov's rights because they had probable cause to arrest him, stating:

> Fairly quickly into the stop, I think within the first two minutes, Officer Gilliam and Gould gather enough information for probable cause for disorderly conduct when they observe the defendant on this property that they know is private property open to the public during business hours. It's the middle [of] the night. He's on the property and then he admits that the reason he's there is to dig through the garbage and that he had actually taken something.

Magomadov's statements in his briefing and at the hearing demonstrate that he had a full and fair opportunity to address the State's argument that there was probable cause to arrest him early in the encounter. Magomadov addressed this argument in his briefing and by referencing the *Clarke* case. Because both of the criteria set forth in *Hoskins* have been met and the issue was squarely presented to but not decided by the district court, this Court can affirm the district court's order denying the motion to suppress on this alternate basis if there is substantial and competent evidence in the record to support a finding that the officers had probable cause to arrest Magomadov early in the encounter. *State v. Simanton*, 171 Idaho 722, 726, 525 P.3d 760, 764 (Ct. App. 2022).

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). A warrantless arrest is lawful if the arresting officer has probable cause to believe the arrestee has committed a public offense in his presence or has committed a felony not in his presence. I.C. § 19-603. Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person they have placed under arrest is guilty of a crime. *State v. Williams*, 162 Idaho 56, 66, 394 P.3d 99, 109 (Ct. App. 2016). Probable cause is not measured by the same level of proof required for conviction. *Id.* Rather, probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949);

5

*Williams*, 162 Idaho at 66, 394 P.3d at 109. When reviewing an officer's actions, the court must judge the facts against an objective standard. *Williams*, 162 Idaho at 66, 394 P.3d at 109. That is, would the facts available to the officer, at the moment of the seizure or search, warrant a reasonable person in holding the belief that the action taken was appropriate? *Id*. A probable cause analysis must allow room for mistakes on the part of the arresting officer, but only the mistakes of a reasonable person acting on facts which sensibly led to his or her conclusions of probability. *State v. Kerley*, 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct. App. 2000).

Disorderly conduct, Boise City Code 5-2-3(2), is defined as, in relevant part: loitering, prowling or wandering upon the private property of another, without lawful business, permission or invitation by the owner or the lawful occupants thereof. Here, the record and transcript demonstrate the officers had probable cause to arrest Magomadov for disorderly conduct. The evidence adduced at the suppression hearing included testimony from Officer Gilliam regarding his initial contact with Magomadov. Officer Gilliam testified that he and Officer Gould were patrolling the alleyway behind the Idaho Youth Ranch where the Youth Ranch collects and commonly stores items donated by the public to their business. Officer Gilliam testified that it is common for people to go back there when the business is closed to steal those items, so he was patrolling that area to see if anyone was doing that. After the officers arrived at the alley, Officer Gilliam testified that he observed a passenger car parked in the alley near the Idaho Youth Ranch, and they contacted Magomadov there. Officer Gilliam testified that he saw Magomadov between Magomadov's vehicle and the donated items at the Youth Ranch. After the officers contacted Magomadov, he informed the officers that he was digging through one of the big dumpsters on the property and had taken a mirror and put it in his vehicle. Officer Gilliam further testified that:

> Yes. [Magomadov] was under arrest. From the moment I knew that he was committing the crime of disorderly conduct he was under arrest. Whether Officer Gould thought that in his head I can't testify to, but that's the way that we were going to proceed through that investigation. But as part of the field training program I want to see if he can make that correct decision or in how he is going to conduct his investigation.

Based on the evidence provided at the hearing, there is substantial and competent evidence to support a finding that the officers had probable cause to arrest Magomadov for disorderly conduct. Here, the objective facts available to the officers were that the area behind the Idaho Youth Ranch was a designated area for collecting donations from the public and, because the business was closed, Magomadov had no lawful reason to be there. The officers observed

6

Magomadov in that area, and Magomadov told the officers he was digging through the trash, found a mirror, and had put it in his vehicle. This was sufficient evidence to warrant a reasonable person in believing that Magomadov was engaged in criminal activity.

In addition, the district court made findings that support this conclusion. For example, the district court found that the officers initially contacted Magomadov because "he was observed by officers on private property after hours. Moreover, Defendant admitted to digging through the business's donation bins or trash and putting a mirror in his vehicle." The district court further noted that during the suppression hearing, "Officer Gilliam testified that he had decided to place Defendant under arrest for disorderly conduct shortly after encountering him. However, because he was training Officer Gould, he decided to allow Officer Gould to continue the investigation to see if Officer Gould would arrive at the same conclusion independently." As a result, because the officers had probable cause to arrest Magomadov, and Magomadov has provided no argument that an arrest cannot be delayed, Magomadov's Fourth Amendment rights were not violated. Thus, the district court did not err in denying Magomadov's motion to suppress.

## IV.

## CONCLUSION

The district court did not err in denying Magomadov's motion to suppress because the officers had probable cause to arrest Magomadov and thus, the officers did not unreasonably extend the duration of Magomadov's detention. Therefore, the order denying Magomadov's motion to suppress and his judgment of conviction are affirmed.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.