**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 51328/51329**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | **Filed: March 9, 2026** |
| **Plaintiff-Respondent,** | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | |
| **ALLEN PAUL TROUP,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Barbara Buchanan, District Judge. Hon. Cynthia K.C. Meyer, District Judge. Hon. Scott Wayman, District Judge.

Judgments of conviction and sentences for possession of a controlled substance, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

In this consolidated appeal, Allen Paul Troup appeals from the district court's judgments of conviction and sentences for possession of a controlled substance. In Docket No. 51328, Troup claims the district court erred in denying his motion to suppress. In both Docket Nos. 51328 and 51329, Troup argues the district court abused its discretion by imposing an excessive sentence and in denying his Idaho Criminal Rule 35(b) motions for leniency. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In February 2023, around 11:45 p.m., Officer Boyle observed a vehicle registered to Troup's wife Sarah, pull into a driveway next to Troup's house, about fifty feet away from the street. Sarah had an outstanding warrant for her arrest. Officer Boyle parked his patrol car outside Troup's home and called for reinforcements. When Troup exited the vehicle from the driver's

1

seat, Officer Boyle asked Troup if he could speak with him; Troup agreed and waved the officer towards him. Officer Boyle walked onto the driveway and asked Troup if he knew where Sarah was, and Troup told Officer Boyle that Sarah was in Spokane, Washington. Troup also told Officer Boyle that he and Sarah knew that Sarah had an outstanding warrant for her arrest.

While Officer Boyle and Troup were conversing, Officer Brown arrived. Officer Boyle asked Officer Brown to look in the vehicle and make sure it was "clear real quick." Officer Brown asked which vehicle to look in, and both Officer Boyle and Troup indicated "this one" and Troup pointed toward the vehicle. Officer Brown then looked through the vehicle's windows with his flashlight and observed several items of drug paraphernalia on the driver's seat. Officer Brown asked Troup if he could look inside the vehicle and Troup declined. Officer Boyle then looked inside the vehicle through the window with his flashlight and also observed the items to be drug paraphernalia.

Upon seeing these items, the officers searched the vehicle and located drug paraphernalia, marijuana, fentanyl pills, heroin, and methamphetamine. The State charged Troup with possession of fentanyl, possession of marijuana, and possession of paraphernalia. Troup filed a motion to suppress arguing the vehicle was parked in the curtilage of his home, his consent given to Officer Boyle to speak with him did not extend to the vehicle, and Troup did not consent to the officers looking inside the vehicle. Specifically, Troup argued the officers had no reason to believe that Sarah was inside the vehicle. The district court held a hearing, during which Officer Brown and Troup testified and Officer Boyle's body camera video was admitted. In addition, the parties stipulated to certain facts: Officer Boyle saw the vehicle and knew it belonged to Sarah; he knew Sarah from a prior incident and knew she had a warrant; he requested a cover unit when he parked outside the residence; the way to the front door of the home is not through the parking area where the vehicle was parked; and that the interaction took place at around 11:44 p.m. The district court denied the motion to suppress. The district court found that the vehicle was parked in the curtilage of the home and that Troup had not consented to the officer looking into the vehicle but, based on the totality of the circumstances, the limited entry to look inside the vehicle was justified due to the outstanding warrant for Sarah. The district court also found the drug paraphernalia in plain view justified the search of the vehicle.

In Docket No. 51328, Troup entered a conditional guilty plea to possession of a controlled substance (fentanyl), possession of paraphernalia, and was released on his own recognizance.

2

Subsequently, the State submitted a notice of violation of plea agreement to the district court after Troup failed to contact probation and parole to complete a presentence investigation. In Docket No. 51329, Troup was also arrested and charged with three counts of felony possession of a controlled substance (cocaine, fentanyl, and methamphetamine) and one count of possession of paraphernalia. Pursuant to a new plea agreement, Troup pled guilty to two counts of possession of a controlled substance, Idaho Code § 37-2732(c)(1), and the remaining charges were dismissed.

The district court held a joint sentencing hearing. The district court sentenced Troup to concurrent, unified terms of seven years with three years determinate for possession of a controlled substance in both cases, with credit for time served for misdemeanor possession of paraphernalia. Troup filed I.C.R. 35(b) motions for a reduction in his sentence in each case. The district court denied the motions. Troup appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Troup claims the district court erred in denying his motion to suppress. Troup contends the district court erred in failing to suppress the evidence taken from the vehicle because the officers unlawfully searched the curtilage of Troup's home when they looked inside the vehicle. Specifically, Troup asserts the officers did not have reason to believe that Sarah was located inside the vehicle. In addition, Troup argues the district court abused its discretion by imposing excessive sentences. Lastly, Troup contends the district court abused its discretion by denying his I.C.R. 35(b) motions.

3

The State contends the district court erred in finding that the area where the vehicle was parked was part of the curtilage of the home. The State further argues the district court erred in finding that, by his words and actions, Troup did not consent to the officer looking in the window of the vehicle. The State also asserts that even if the area was part of the curtilage of the home, the officers had reason to believe Sarah may have been hiding in the vehicle and, being subject to an arrest warrant, properly looked inside the vehicle. Finally, the State argues that the district court did not abuse its discretion by imposing Troup's sentences or in denying his I.C.R. 35 motions.

**A.      Motion to Suppress**

The Fourth Amendment to the United States Constitution, and its counterpart Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen against unreasonable search and seizures "in their persons, houses, papers, and effects." UNITED STATES CONST. amend. IV; *State v. Christensen*, 131 Idaho 143, 146, 953 P.2d 583, 586 (1998) (where the language of the Fourth Amendment and Art. I, § 17 are similar, but Idaho is not required "to follow United States Supreme Court precedent in interpreting our own constitution"). "The curtilage is that area immediately surrounding and associated with a residence in which a person has a reasonable expectation of privacy." *Christensen*, 131 Idaho at 147, 953 P.2d at 587. In addition, "while citizens have a reasonable expectation of privacy in the areas immediately surrounding their homes, not all areas of the curtilage are equal in terms of privacy. *Id.* (where driveways are areas with "an implied invitation for the public" to access the house).

Troup claims that Officer Brown could not lawfully traverse the curtilage of Troup's home to look inside the vehicle, because there was no reason to believe Sarah may be hiding in the vehicle. The district court found that the driveway where the vehicle was located was within the curtilage of the home. The State argues the district court erred in finding the vehicle was located in the curtilage of the home. Specifically, the State contends that the district court failed to consider the *Dunn* factors, and that proper application of the *Dunn* factors demonstrates that the vehicle was not in the curtilage of the home. *See United States v. Dunn*, 480 U.S. 294, 301 (1987). These factors include: (1) the proximity of the area claimed to be curtilage to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by. *Id.* Idaho employs a somewhat more expansive analysis under the state constitution. *State v. Albertson*, 165 Idaho 126, 130 n.4, 443 P.3d 140, 144 n.4 (2019). Idaho courts apply the

*Dunn* factors in the context of the locality of the residence and with consideration to the differences in custom and terrain when contemplating particular expectations of privacy. *State v. Webb*, 130 Idaho 462, 467, 943 P.2d 52, 57 (1997).

As to whether the vehicle was in the curtilage of the home, the district court stated:

I want to talk about the curtilage. . . . I do find that the driveway wasn't the route to the front door. The car was pulled way up next to the house, I think about 50 feet away from the street. There wasn't a garage. It was late at night and that's a factor. And I agree that it would not be appropriate for a member of the public to walk up that driveway and peer in the windows of that car. So I agree that it is part of the curtilage of this home.

For illustrative purposes, below is a front view of the property. The driveway on which the interaction occurred is on the right. Troup pulled up to the end of the driveway between the house and the business on the right.



In regard to the *Dunn* factors, Troup argues that the house is accessible from the driveway. While one could access the side entrances of the house and the driveway is proximate to the house, it did not provide a direct route to the front door or enclosed attached garage. Troup acknowledges the area is not fenced or otherwise enclosed, as is the front yard.

5

Troup further acknowledges that he made no effort to protect the area from observation, including from the immediately adjacent business. However, he points out that this Court, in *State v. Cada*, 129 Idaho 224, 231-32, 923 P.2d 469, 476-77 (Ct. App. 1996), stated that enclosures and protection from observation by passersby is of limited assistance in defining curtilage of a home. In *Cada*, this Court stated:

> we adhere to the description of curtilage heretofore applied by Idaho courts, which encompasses the area, including domestic buildings, immediately adjacent to a home which a reasonable person may expect to remain private even though it is accessible to the public.

*Id.* at 232, 923 P.2d 469 at 477. However, in *Cada*, the officers followed a driveway between the house and the detached garage. The Court stated that "If outbuildings are encompassed within curtilage, so must be grounds extending between the home and outbuildings, including paths and drives connecting them." *Id.* Here, no outbuilding or enclosed area is accessed by the driveway. Moreover, only a gravel path separates the driveway from the business property, and the area where the vehicle was parked is directly accessible from the gravel pathway. The curtilage of a home does not include all the associated property, but that which is "being used for intimate activities of the home." *Webb*, 130 Idaho at 466, 943 P.2d at 56. Application of the relevant factors demonstrates that the driveway where the vehicle was parked is not curtilage of the house.

Even if the driveway area where the vehicle was parked is considered in the curtilage of the house, the district court held that Sarah's arrest warrant gave the officers authority to enter the curtilage to look for Sarah inside her vehicle because they reasonably believed she may be inside. "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980).

The district court found:

> And I do find that when the officers are aware that--the parties agree, that this was Ms. Troup's car, the party's car, and that they see it drive in, Mr. Troup gets out, there's room for other people in the vehicle, they know she has warrants, so they had--it was reasonable, they could reasonably believe that she was hiding in that vehicle, concealed in the vehicle.

Troup and the State agree that there is a split of authority on whether the *Payton* "reason to believe" standard is akin to probable cause or reasonable suspicion. *Compare United States v. Vasquez-Algarin*, 821 F.3d 467, 476 (3d Cir. 2016) (holding that the "reason to believe" standard "amounts to a probable cause standard") and *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir.

6

1995) (holding that probable cause is "too stringent a test" for determining "reason to believe"). The Idaho appellate courts have not directly adopted a standard; however, this Court applied a less than probable cause analysis in *State v. Northover*, 133 Idaho 655, 991 P.2d 380 (Ct. App. 1999).

In *Northover*, Boise Police officers, Walker and Hartgrove, went to a two-story duplex to serve two arrest warrants upon Northover. The duplex had two doors in the center of the front of the building. When the officers approached, they could see light coming from the lower daylight basement window to the right of the doors. Officer Walker left the pathway and approached the window. He then knelt on the grass and looked through the window. He observed an individual in a bedroom who fit Northover's description. *Id.* at 656-57, 991 P.2d 381-82. We noted that "although using *the higher standard of probable cause*, the district court implicitly found that officer Walker possessed at least a reasonable belief that Northover was in the residence at the time the arrest warrants were being executed." *Id.* at 659, 991 P.2d at 384 (emphasis added). The facts supporting the district court's implicit finding were simply that "the basement light was on and it was approximately 8:00 p.m." *Id.* The Court cited consistent cases from other jurisdictions:

> Based upon the record before this Court, we cannot find error in the district court's finding. *See Morehead*, 959 F.2d at 1496 (presence of car in the carport and a truck in front of the house gave the officers reason to believe that the suspect was on the premises). *See also Route*, 104 F.3d at 63 (hearing a television and noticing a vehicle in the driveway was sufficient for officer to form reasonable belief that the suspect was within); *Lauter*, 57 F.3d 212 (information that the suspect was unemployed and typically slept late supported a reasonable belief that the suspect was within the residence when the warrant was executed); *United States v. Woods*, 560 F.2d 660, 665 (5th Cir.1977) (officer's belief that suspect was within was reasonable where it was 8:30 in the morning and the suspect was not known to be working).

*Id*. These cited cases applied a less than probable cause standard. We agree that "reason to believe" is just that and does not equate to probable cause.

Turning to whether the officers had a reasonable belief that Sarah may be in the vehicle, an officer may draw reasonable inferences from the facts in his possession, and those inferences may be informed by the officer's experience and law enforcement training. *State v. Kysar*, 116 Idaho 992, 993, 783 P.2d 859, 860 (1989) (probable cause); *State v. Simanton*, 171 Idaho 722, 725, 525 P.3d 760, 763 (Ct. App. 2022) (reasonable suspicion). The appellate court considers the totality of the circumstances rather than viewing individual facts in isolation. *State v. Kelley*, 159 Idaho 417, 424, 361 P.3d 1280, 1287 (Ct. App. 2015); *see also State v. Anderson*, 154 Idaho 703, 706, 302 P.3d 328, 331 (2012).

7

Here, Officer Boyle was familiar with Sarah and knew she had an active warrant for her arrest. He recognized the vehicle as Sarah's vehicle and saw it pull into the parking area of Troup's house. Given the darkness, Officer Boyle could not discern who or how many people were inside the vehicle. Officer Boyle parked his patrol car and was approaching and visible when Troup exited the driver's seat. Troup denied Sarah was around but confirmed both he and Sarah knew she had an active warrant. Officers may take into account the fact that a person involved in criminal activity may be attempting to conceal themselves. *Valdez v. McPheters*, 172 F.3d 1220, 1226 (10th Cir. 1999). The totality of the circumstances support the district court's finding that there was reason for Officer Boyle to believe that Sarah could be present and concealing herself inside her vehicle to avoid apprehension.

In addition, this Court held in *State v. Clark*, 124 Idaho 308, 313, 859 P.2d 344, 349 (Ct. App. 1993):

> [T]he presence of a police officer within the curtilage does not, *ipso facto*, result in an unconstitutional intrusion. There is an implied invitation for the public to use access routes to the house, such as parking areas, driveways, sidewalks, or pathways to the entry, and there can be no reasonable expectation of privacy as to observations which can be made from such areas. Like other citizens, police with legitimate business are entitled to enter areas of the curtilage that are impliedly open to public use.

Only a substantial and unreasonable departure from the normal access routes will exceed the scope of the implied invitation and intrude upon constitutionally protected privacy interests. *State v. Hiebert*, 156 Idaho 637, 644, 329 P.3d 1085, 1092 (Ct. App. 2014).

Finally, the State argues that even if the vehicle was in the curtilage of the house and there was no reason to believe Sarah may be in the vehicle, the district court erred in finding that Troup did not consent to Officer Brown looking in the vehicle. Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The existence, voluntariness, and scope of a consent to search is a question of fact to be determined from the totality of the circumstances. *State v. Mitchell*, 175 Idaho 653, 658, 569 P.3d 155, 160 (Ct. App.

2025). Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991).

Implied consent exists when, under the totality of the circumstances, a reasonable officer would believe a person consented to the entry. *Mitchell*, 175 Idaho at 658, 569 P.3d at 160. In *Mitchell*, the Court stated:

> This Court has not directly addressed what factors are indicative of implied consent; however, we have held that nonverbal conduct may be probative of voluntary consent and can satisfy consent to search. Where in response to an officer's request to enter his room, the occupant shook his head and gestured to the officer to enter, this Court held that the district court properly found consent to search the room. *Dahl*, 162 Idaho at 548, 400 P.3d at 636. This Court has also held that a third-party consented to a search of a wallet by handing it to the officer for inspection without any request to do so. *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002).
>
> Federal courts have also considered specific factors under the totality of the circumstances to determine whether officers had implied consent. If an officer requests permission to enter a residence, a court is more likely to find consent when coupled with an individual's nonverbal conduct, such as a failure to object. *See, e.g.*, *Shaibu*, 920 F.2d at 1427 (no implied consent found where an individual opened a door, failed to object to entry, and officers did not indicate desire to enter residence); *United States v. Jones*, 701 F.3d 1300, 1321 (10th Cir. 2012) (implied consent found where an officer indicated his desire to search a residence, and an individual walked toward the residence and unlocked back door with the officer behind him); *United States v. Little*, 431 F. App'x 417, 420 (6th Cir. 2011) (no implied consent found where an officer did not request permission to enter even though the homeowner knew the officer and did not object to entry).
>
> . . . .
>
> Finally, federal courts have found certain gestures by their very nature will provide clear evidence of consent. *See, e.g.*, *United States v. Lewis*, 476 F.3d 369, 381 (5th Cir. 2007) (implied consent to enter a hotel room found where an occupant gestured at officers to come in); *United States v. Winston*, 444 F.3d 115, 122 (1st Cir. 2006) (implied consent found where, in response to an agent's question as to the location of the nightstand, an individual motioned to the object with his shoulder); *United States v. White*, 508 F. App'x 837, 841 (10th Cir. 2013) (implied consent found where a homeowner responded to the officers' question about the location of the subject of an investigation by taking them into the residence).

*Mitchell*, 175 Idaho at 658-9, 569 P.3d at 160-1.

In *Mitchell*, officers contacted Mitchell and Bunce at their residence. *Id.* at 656, 569 P.3d at 158. Bunce initially positioned himself between the officers and the door to the residence. *Id.* While one officer spoke with Mitchell separately outside, two other officers remained with Bunce, who stood blocking the residence entrance with his arms folded across his chest. *Id.* The officer

who spoke with Mitchell returned to Bunce and asked about a box containing methamphetamine. *Id.* In response, Bunce lifted his hand from under his armpit and pointed with his right hand over his left shoulder toward the door and then lowered his hand to his shoulder, sighed, turned around and entered the residence. *Id.* The officer followed him inside. *Id.* Considering the various factors, this Court concluded "a reasonable officer could interpret Bunce's series of nonverbal actions in response to a question about a location of an item as consent to enter." *Id.* 659, 569 P.3d at 161.

Here, in response to Officer Boyle's question if he could "come over and talk," Troup responded "yeah, come on," and waved Officer Boyle over to the driveway area. Troup expressly consented to Officer Boyle entering the property, without express limitation. Troup was only a few feet from the vehicle. When Officer Brown arrived, Officer Boyle was still speaking to Troup and directed Officer Brown to make sure the vehicle was clear. When Officer Brown asked which vehicle, both Officer Boyle and Troup indicated towards the vehicle Troup had just exited. Troup raised his arm and pointed toward the vehicle and said, "This one." While Officer Brown went to the vehicle and looked through the windows with his flashlight, Troup continued talking to Officer Boyle. Considering the various factors and Troup's verbal and non-verbal actions, coupled with the lack of objection under the circumstances, Troup impliedly consented to the officer looking in the vehicle.

The plain view exception allows police officers to make warrantless seizures of evidence viewed from a location where the officer has a right to be. *Christensen*, 131 Idaho at 146, 953 P.2d at 586.

The district court found:

> So it was reasonable to go up and look into the vehicle to see if there was anybody in the vehicle. And when they looked in the vehicle they saw in-- obviously they had to use a flashlight, it is 1:00 in the morning or almost 1:00 but you can see items on the seat and the officers recognized those as paraphernalia. And once we get there, the automobile exception does apply and the officers are entitled to the search the vehicle and there we are.

Troup does not contest the district court's finding that the search was valid after the officer observed paraphernalia in plain view. Based on the above, the district court did not err in denying Troup's motion to suppress.

**B.    Excessive Sentences**

Troup claims the district court abused its discretion by imposing unified sentences of seven years with three years determinate for possession of a controlled substance in each case. Sentencing is a matter for the trial court's discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established and need not be repeated here. *See State v. Hernandez*, 121 Idaho 114, 117-18, 822 P.2d 1011, 1014-15 (Ct. App. 1991); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). Our role is limited to determining whether reasonable minds could reach the same conclusion as the district court. *State v. Biggs*, 168 Idaho 112, 116, 480 P.3d 150, 154 (Ct. App. 2020). Applying these standards, and having reviewed the record in this case, we cannot say the district court abused its discretion.

**C.    Idaho Criminal Rule 35(b) Motion**

Troup argues the district court abused its discretion when it denied his I.C.R. 35(b) motions for reduction of his sentences. A motion for reduction of sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting an I.C.R. 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of an I.C.R. 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987). Upon review of the record, including any new information submitted with Troup's I.C.R. 35 motions, this Court concludes the district court did not abuse its discretion in denying the motions.

**IV.**

**CONCLUSION**

Based on the foregoing, the district court did not err by denying Troup's motion to suppress the evidence seized from the vehicle. The district court also did not abuse its discretion in

sentencing or by denying Troup's I.C.R. 35(b) motions.  Therefore, the judgments of conviction and sentences and denial of Troup's I.C.R. 35(b) motions in each case are affirmed.

Judge HUSKEY and Judge Pro Tem MELANSON **CONCUR**.